**UNITED STATES of America, Appellee,**

**v.**

**Terry D. NAZARENUS, Appellant.**

**No. 92–2348.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1992.

Decided Jan. 27, 1993.

Al Arendt, Pierre, SD, argued, for appellant.

Mikal G. Hanson, Asst. U.S. Atty., Pierre, SD, argued, for appellee.

Before McMILLIAN, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In February, 1991, Terry Nazarenus was indicted on two counts of aggravated sexual abuse. He was arrested, arraigned, and subsequently released on bond. A superseding indictment alleging three counts of aggravated sexual abuse was filed in August, 1991. Following a series of continuances requested by the government so that DNA and other forensic testing could be completed, a four-day jury trial was held in February, 1992. Nazarenus was found guilty on two counts of aggravated sexual abuse under 18 U.S.C. § 2241(a). Nazarenus appeals his conviction. We affirm.

The government moves to supplement the record. We grant that motion in part and deny it in part, for reasons that we shall indicate.

I.

█ Nazarenus first asserts that he was denied a speedy arraignment. Rule 5(a) of the Federal Rules of Criminal Procedure

provides that an officer arresting a person under a warrant "shall take the arrested person to the nearest available magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer." Fed.R.Crim.P. 5(a). Nazarenus was arrested on February 14, 1991, in Valentine, Nebraska, and arraigned before a federal magistrate on March 1, 1991, in Pierre, South Dakota, the district in which the crime was believed to have been committed. Nazarenus contends that the two-week period between his arrest and his South Dakota arraignment was an unjustifiable delay in violation of Rule 5(a).

Rule 40(a) states that when "a person is arrested in a district other than that in which the offense is alleged to have been committed, that person shall be taken without unnecessary delay before the nearest available federal magistrate." On February 15, 1991, the day after his arrest, Nazarenus was taken before a Nebraska state judge because the federal magistrate for that area of Nebraska was unavailable. The government offers in its motion to supplement the record a certified copy of the "journal entry and order" from the state court proceeding, a document showing that Nazarenus was advised of the charges against him and of his Constitutional rights. A notation in the document shows that the U.S. attorney moved for a continuance of the hearing so that Nazarenus could be brought before a federal magistrate for a formal hearing and arraignment and that Nazarenus was to be held without bond pending appearance in federal court in Omaha, Nebraska.

Nazarenus was taken to Omaha and appeared before a federal magistrate there on February 21, 1991. The magistrate set an identity hearing for the following day and appointed counsel to represent Nazarenus at the hearing. On February 22, 1991, Nazarenus appeared with counsel before the same magistrate. According to the clerk's minutes of that proceeding, Nazarenus waived his right to an identity hearing and consented to an order removing him to

* The HONORABLE DANIEL M. FRIEDMAN, Senior Circuit Judge for the Federal Circuit, sitting by designation.

South Dakota for further proceedings. On March 1, 1991, Nazarenus appeared before a magistrate in South Dakota, at which time he was arraigned and bound over for trial.

Nazarenus alleges no prejudice consequent to these delays. This court has held that, absent a showing of prejudice to the defendant, unnecessary delays between arrest and arraignment are not cause for setting aside a conviction. *See, e.g., Theriault v. United States,* 401 F.2d 79, 86 (8th Cir.1968), *cert. denied,* 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969). Accordingly, these brief delays are insufficient cause to vacate Nazarenus's conviction.

## II.

Nazarenus's trial on these charges began on February 3, 1992, almost a year after his arraignment. Trial was originally set for May 6, 1991. On April 24, the government moved for a continuance of four weeks to allow for forensic testing of cigarettes found in Nazarenus's car to determine if they contained sufficient cellular material to allow DNA testing. Through counsel, Nazarenus filed a response of "no objection", and the continuance was granted on May 2, 1991. Trial was reset for June 10, 1991, but on May 31, 1991, the government again moved for a continuance. Based upon the first test results which had found sufficient cellular material to conduct DNA tests and which required additional tests, as well as upon tissue from the victim which the government had just learned contained seminal fluid, the government sought an eight-week continuance. The record of the continuance motion hearing indicates that Nazarenus's attorney "concur[red]" with the government's request, and the trial was reset for August 5, 1991. On July 29, 1991, however, the government moved for an additional continuance, stating that the DNA testing had begun but would require an additional five weeks. The record shows no response from Nazarenus, and on August 5, 1991, the trial court granted the motion. The order specified no new trial date, but it did set a *Frye* hearing on the admissibility of

the DNA evidence for September 23, 1991. The clerk's notes from that proceeding indicate that the government and Mr. Nazarenus intended to "submit[ ] a joint motion for continuance of the trial date." No written notice appears in the record, but Nazarenus offers nothing to indicate that the clerk's notes are inaccurate. On November 22, 1991, the trial court issued an order stating that counsel for both parties had moved for a three-month continuance and that "[g]ood cause appear[ed]." Accompanying that order was a notice setting the trial for February 3, 1992, when it was indeed held.

■ Nazarenus contends on appeal that the 11–month time lapse between arraignment and trial violated his constitutional and statutory right to a speedy trial. Under 18 U.S.C. § 1361(c)(1), a criminal defendant is entitled to a trial within 70 days of his or her appearance before a judicial officer in the court where the indictment is pending. Continuances caused or consented to by a defendant are generally excluded time under the statute if they are necessary for the "ends of justice." *See United States v. Bolton,* 905 F.2d 319 (10th Cir.1990), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991); *see also United States v. Ray,* 768 F.2d 991, 998 n. 11 (8th Cir.1985). Additionally, unless the defendant moves for dismissal of the indictment on speedy trial grounds before the trial, the right to dismissal under the statute is waived. *See* 18 U.S.C. § 3162(a)(2); *see also United States v. Kaylor,* 877 F.2d 658, 663 (8th Cir.), *cert. denied,* 493 U.S. 871, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989). Nazarenus did not move for dismissal before trial and therefore waived his right under the statute.

■ The Sixth Amendment also guarantees a speedy trial. The Supreme Court has stated that the primary considerations in evaluating whether the right has been violated are the length of the delay, the reason for the delay, whether the defendant asserted his or her speedy trial right, and prejudice to the defendant. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Given

the reasons for the delay, Nazarenus's failure to assert his right to a speedy trial, and the lack of asserted prejudice to the defendant, we do not believe that Nazarenus's constitutional right to a speedy trial has been violated. Accordingly, the delay provides no basis for vacating the conviction.

### III.

■ Nazarenus challenges the trial court's refusal to strike two prospective jurors for cause. One prospective juror was married to a criminal investigator for the state tax department, and the other had a background in law enforcement and two relatives in law enforcement. Nazarenus's lawyer moved to strike both of these prospective jurors for cause. When the trial court declined to do so, Nazarenus's attorney used peremptory challenges to eliminate both from the jury panel.

The government offers excerpts from the trial transcript that reveal that although prospective jurors conceded to Nazarenus's lawyer that they could understand why a defendant's lawyer might feel uneasy with them on the jury, both stated that they could be fair, listen to the evidence, listen to the instructions, and not let their relationships or background influence their evaluation of the evidence.

■ A trial court's decision as to disqualification of prospective jurors is reviewed for abuse of discretion. *See, e.g., United States v. Tibesar,* 894 F.2d 317, 319 (8th Cir.), *cert. denied,* 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990). Given the assurances of impartiality that the jurors offered, the district judge in this case did not abuse his discretion. The jury selection issue therefore provides no grounds for reversal.

### IV.

■ Nazarenus was charged under 18 U.S.C. § 2241(a), § 2245(2)(A), and § 2245(2)(C), which prohibit forcible sexual acts "in the special maritime and territorial jurisdiction of the United States". For purposes of this case, this means such crimes occurring on federal lands. *See* 18 U.S.C. § 7(3). Nazarenus was also charged under 18 U.S.C. § 1152, which makes applicable to "the Indian country" all crimes committed "in any place within the sole and exclusive jurisdiction of the United States." Under the indictment, the government was required to prove that the crime took place on a reservation or on other Indian land. *See* U.S.C. § 1151.

The indictment alleged that the crime occurred on the Rosebud Indian Reservation, Todd County, South Dakota, and the judge properly instructed the jury that an element of the offense was that "the alleged offense occurred within Indian country". (*See* Instruction number 15). Nazarenus argues that the government's evidence regarding the location where the crime occurred was inconclusive and therefore that the government never proved this element of its case. The trial transcript indicates, however, that Nazarenus stipulated that "the location identified in the indictment is in Indian country," and the government argues that this stipulation, which was read to the jury, takes the place of proof on the Indian country issue.

We admit, first of all, to some puzzlement over the meaning of the stipulation. The indictment says that the offense occurred "near Mission, in Todd County, in Indian Country...." The stipulation, as a literal matter, therefore seems to say only that Mission (or some unspecified place some unspecified distance in some unspecified direction from Mission) is in Indian country. What it does not say directly is that the events that gave rise to the charge occurred in Indian country or, in other words, that the defendant waives proof of that element of the offense. We think that the government could have drafted a more pointed and precise agreement. We hold, nevertheless, that the clear purport of the stipulation is that the events alleged to have been criminal occurred in the Indian country, mainly because we cannot think of any plausible alternative meaning. The stipulation has no other obvious construction, and unless it is given the construction that we adopt, it is meaningless, redundant, or circular. We therefore reject defendant's contention on this point.

### V.

■ Nazarenus contends on appeal that evidence of penetration and of forensic

tests linking him to the victim was inconclusive and that, accordingly, his motion for judgment of acquittal at the close of the trial should have been granted. The indictment charged aggravated sexual abuse under 18 U.S.C. § 2241(a), which makes it a crime for a person, by force or threat, knowingly to cause "another person to engage in a sexual act ... or [to] attempt[ ] to do so." Under 18 U.S.C. § 2245(2), various specific acts are described as "sexual act[s]" for purposes of Section 2241. The two specific forced acts that the jury found Nazarenus committed or attempted, thereby violating Section 2241, were "contact between the penis and the vulva" (vaginal sexual assault) and "contact between ... the penis and the anus" (anal sexual assault). Contrary to Nazarenus's argument, penetration is not required for commission of either type of criminal "sexual act" under these statutes.

Nazarenus's defense at trial was that the victim consented to the sexual act in which they engaged.[1] Because Nazarenus admitted at trial that he and the victim had sexual intercourse (albeit, he maintained, consensual intercourse), it is odd that he now protests the sufficiency of evidence on the issues of penetration and forensic identification. We note, however, that Nazarenus admitted at trial only to engaging in one sex act with the victim. He did not admit to two separate sex acts, although he was convicted on both counts. Accordingly, we engage in a sufficiency of the evidence inquiry, although ours has a different focus from the one that Nazarenus suggests. We review the evidence to determine if it was sufficient to uphold his convictions on two counts of aggravated sexual abuse.

First, DNA testing on semen from vaginal swabs of the victim implicated Nazarenus. Analysis of the vaginal swabs pre-

sented inconclusive evidence regarding the semen source because it indicated the presence of two different sources. Still, the stronger DNA pattern found in the semen from that swab was consistent with Nazarenus's DNA. (Results of the rectal swabs' analysis was not introduced into evidence.) Secondly, as already noted, Nazarenus testified at trial that he had sexual intercourse with the victim, although whether it was vaginal or anal was unspecified. Specifically, he testified that the act occurred with her "leaning over the car." The victim testified that Nazarenus knocked her to the ground, choked her, forcibly removed her underpants, and threatened to kill her if she did not cooperate. She testified that he "pulled down his pants" and "touched [h]is ... thing by my butt."

On issues of sufficiency of evidence, we review the evidence in the light most favorable to the verdict. *See, e.g.,* *Durns v. United States,* 562 F.2d 542, 545–46 (8th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977). We believe this evidence is sufficient to support a guilty verdict on the charge of vaginal sexual assault. We also believe it is sufficient to support a guilty verdict on the charge of *attempted* anal sexual assault. The relevant jury instruction on the latter count stated that the government must prove that Nazarenus "did knowingly cause *or* attempt to cause [the victim] to engage in a sexual act, that is, contact between the penis and anus."[2] The evidence supports the attempt but seems insufficient to support a guilty verdict on the act itself. The jury was not given specific interrogatories distinguishing between the attempt and the act, and they returned only a general verdict finding Nazarenus guilty on the anal assault count. We therefore do not know if the jury found him guilty of the attempt or of the act itself. Either finding would

---

**1.** Nazarenus does not raise the issue of sufficiency of evidence on the consent issue, which seems to be the crucial one on which his conviction turned in a general sense. We note, however, the abundance of evidence from which the jury could have concluded that the victim was physically forced to engage in the sexual act(s). In particular, we emphasize the testimony regarding how badly she was beaten and traumatized after her encounter with Nazarenus. This

testimony includes that of the victim, the couple to whose farmhouse she walked after the assault, and the emergency room doctor who examined her.

**2.** Oddly, this count of the indictment used the additive conjunction "and" rather than the alternative conjunction "or", indicating that both cause *and* attempt to cause must be proved for a conviction on the count. The language of the

support a conviction under Section 2241(a), which makes criminal and attributes the same legal import to both attempt and act. But if the jury found him guilty of the latter, a crime we already have said is inadequately supported by the evidence, the conviction on this count is problematic. *See Cokeley v. Lockhart*, 951 F.2d 916, 921 (8th Cir.1991) (citing *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *United States v. Sales*, 725 F.2d 458, 459 (8th Cir.1984)) (general verdict must be set aside if jury was instructed that it could rely on any of two or more independent grounds and one of those is subsequently deemed insufficient), *cert. denied*, —— U.S. ——, 113 S.Ct. 296, 121 L.Ed.2d 220 (1992).

If the conviction on this case was erroneous, however, it was harmless because it did not affect Nazarenus's substantial rights. *See* Fed.R.Crim.P. 52(a). Even if Nazarenus had been convicted of a single count under Section 2241(a), his sentence would be same as that already imposed for conviction on two counts. This is because closely related counts involving the same victim and the same act are grouped together for sentencing purposes. *See* U.S.S.G. § 3D1.2(a). The offense level applicable to the group is the offense level for the most serious of the counts comprising the group. U.S.S.G. § 3D1.3(a). Nazarenus's sentence, then, would be calculated to be the same whether he was convicted of one or two counts of aggravated sexual abuse. Although the lack of specificity of the verdict on the charge of anal sexual assault troubles us, given the lack of impact on Nazarenus's sentence, we see no reason to disturb the jury verdict.

## VI.

■ Nazarenus argues on appeal that the trial court erroneously admitted evidence that he frequently drove fast. The government claims that the evidence was properly admitted to undermine Nazarenus's credibility as a witness. Specifically,

the government attempts to link this testimony to Nazarenus's explanation of a speeding citation that he received on the night of the sexual assault. Nazarenus told the officer that he was driving fast in order to test then-recent adjustments to his car alignment, and the government maintained that evidence indicating that he often exceeded the speed limit, even without such cause, tended to impugn his credibility. At trial, Nazarenus objected to the testimony of only one of the witnesses who testified about his driving habits, and we therefore address that single evidentiary ruling as the sole one preserved for appeal.

■ Rule 608(a) of the Federal Rules of Evidence provides, in relevant part, that the credibility of a witness may be "attacked ... by evidence in the form of opinion or reputation" but only as regards "character for ... untruthfulness". Fed. R.Evid. 608(a). Evidence that Nazarenus frequently drove fast is not in the form of opinion or reputation as required by this rule and is not connected with his character for truthfulness, and therefore it is not admissible under the rule. Rule 608(b), moreover, specifically prohibits this kind of testimony, stating that "[s]pecific instances of conduct of a witness, for the purpose of ... attacking the witness' credibility, ... may not be proved by extrinsic evidence."[3] The evidence, therefore, was plainly inadmissible. Considering the record as a whole, however, we find that the evidence regarding Nazarenus's tendency to drive fast either failed to influence the jury or had only the slightest effect on their decision. *See Wright v. United States*, 389 F.2d 996, 1000 (8th Cir.1968); *Atkinson v. United States*, 344 F.2d 97, 101 (8th Cir.), *cert. denied*, 382 U.S. 867, 86 S.Ct. 141, 15 L.Ed.2d 106 (1965). Accordingly, we consider this evidentiary ruling as harmless error. *See* Fed.R.Crim.P. 52(a).

## VII.

■ The district court gave a jury instruction on intentional flight by a defen-

---

jury instruction more closely reflects the language of the relevant statute, which also uses the conjunction "or".

3. The testimony at issue here does not fall within the discretionary exceptions to that general rule, exceptions that are applicable only when it is the witness then testifying whose credibility is being impeached. Fed.R.Evid. 608(b).

dant. Nazarenus asserts that the evidence of flight was "extremely circumstantial" and notes that neither party requested the instruction given. He contends, therefore, that the instruction was prejudicial to him.

■ The evidence that apparently prompted the instruction was that, after a Bureau of Indian Affairs Criminal Investigator spoke to Nazarenus at his construction job site, Nazarenus borrowed his foreman's car and drove 30 miles to his home. The hasty departure made the investigator suspicious. Additionally, a female acquaintance of Nazarenus testified that, after he had spoken to the investigator, Nazarenus asked to stay in her apartment to avoid the police who, he told her, were looking for him. Nazarenus also told the woman that he had a truck driver friend who could help him flee. An instruction that correctly states the law is not erroneously given even if the defendant did not want it and the government did not ask for it as long as it relates to issues in the case and facts developed by the evidence. *See* 2 C. Wright, *Federal Practice and Procedure: Criminal* 2d §§ 484–85 at 709–10 (1982); *see also Lakeside v. Oregon,* 435 U.S. 333, 338, 340–41, 98 S.Ct. 1091, 1094, 1095–96, 55 L.Ed.2d 319 (1978). Considering the evidence of flight presented at trial, the instruction was not erroneous.

## VIII.

■ After this appeal was filed, the government moved to supplement the record to allow inclusion of several items, some of which have already been noted in this opinion. These items included a certified copy of the "journal entry and order" relating to Nazarenus's appearance before the Nebraska state judge; two sets of clerk's notes from hearings before the trial judge; and a memorandum from the FBI agent in Omaha, Nebraska, to the FBI office in Minneapolis, Minnesota. The memorandum, dated February 21, 1991, and apparently written in response to a telephone inquiry, states that the federal magistrate for the area where Nazarenus was arrested was unavailable "for either arraignment or initial appearance" and, therefore, that Nazarenus was taken to the Nebraska state judge for the initial appearance. The memorandum also states that Nazarenus was advised of his right to remain silent and made no statements "other than to provide pertinent biographical data." Nazarenus objects to the supplementation of the record, alleging that the documents are irrelevant.

The two sets of clerk's notes are already in the record, so we need not address this moot issue. We grant the government's motion regarding the other documents. Until Nazarenus's appeal brief was filed, the government apparently did not know that Nazarenus was raising the issue of speedy arraignment. The state court record and the FBI memorandum provide information not otherwise in the record designated on appeal. Because the documents are relevant to issues on appeal, particularly the speedy arraignment issue, we grant the government's motion as to those documents.