Terry D. NAZARENUS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 95–1132.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 20, 1995.

Decided Nov. 13, 1995.

Al Arendt, Pierre South Dakota, argued, for appellant.

Mikal Hanson, Assistant U.S. Attorney, Pierre, S.D., argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, and WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A federal jury found Terry Nazarenus guilty of two counts of aggravated sexual abuse, *see* 18 U.S.C. § 2241(a), after a four-day trial in early 1992. His conviction was affirmed on appeal. *See United States v. Nazarenus,* 983 F.2d 1480 (8th Cir.1993). Mr. Nazarenus subsequently petitioned for federal postconviction relief, *see* 28 U.S.C. § 2255, contending that he received constitutionally significant ineffective assistance of counsel at his trial. After an evidentiary hearing, a magistrate recommended that the petition be denied. In late 1994, the district court adopted that recommendation. Mr. Nazarenus appeals; we affirm the judgment of the district court.[1]

I.

"The benchmark for judging any claim of [constitutionally significant] ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner's claim "that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the [petitioner] must show that counsel's performance was deficient.... Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. "Failure to make the required showing of either deficient performance or suffi-

---

**1.** The Honorable John B. Jones, United States District Judge for the District of South Dakota, adopting the report and recommendations of the Honorable Mark A. Moreno, United States Magistrate Judge for the District of South Dakota. *See* 28 U.S.C. § 636(b)(1)(B).

cient prejudice defeats the ineffectiveness claim." *Id.* at 700, 104 S.Ct. at 2071.

■ Mr. Nazarenus was indicted in early 1991. His trial took place almost exactly a year later. The delay was because of several continuances requested by the government and consented to by Mr. Nazarenus's trial lawyer. The government asked for those continuances to allow more time for DNA testing of various evidence. Mr. Nazarenus now contends, first, that he was deprived of a speedy trial by his trial lawyer's agreement to the continuances; second, that because the results of those tests could have further incriminated him (as in fact they did), it was professionally unreasonable for his trial lawyer to agree to any requests for continuances based on the need for DNA testing; and, third, that it was professionally unreasonable to consent to DNA testing at all.

■ "[T]he proper standard for attorney performance is that of reasonably effective assistance," *id.* at 687, 104 S.Ct. at 2064, measured by "an objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064. In other words, the reviewing court's task is to "determine whether, in light of all the circumstances, the [lawyer's performance was] outside the range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. "Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories." *Foster v. Lockhart,* 9 F.3d 722, 726 (8th Cir.1993).

During the evidentiary hearing before the magistrate, Mr. Nazarenus's trial lawyer testified that he "believe[d]" that he talked with Mr. Nazarenus about each of the government's continuance requests. The lawyer further testified that Mr. Nazarenus repeatedly and "adamantly" stated that he never had any sexual contact with the alleged victim and therefore that the DNA test results would exonerate him. The lawyer also testified that "had [Mr. Nazarenus] told me he did have sex with her, I wouldn't have gone along" with the DNA testing. Finally, the lawyer testified that Mr. Nazarenus never admitted to having any sexual contact with the alleged victim until after "the DNA test-

ing came back showing [that] he had." In contrast, Mr. Nazarenus testified during the evidentiary hearing that his trial lawyer never consulted him about the government's requests for continuances to allow DNA testing, never explained what DNA testing could reveal, and did not discuss with him the alleged events until shortly before trial.

In finding that Mr. Nazarenus "was advised of each continuance motion and consented to and/or acquiesced in" each continuance, the lower court explicitly rejected Mr. Nazarenus's testimony as not credible. The lower court further found that Mr. Nazarenus indeed told his trial lawyer that the DNA test results would exculpate him and that Mr. Nazarenus changed his story after the DNA test results—from a denial of any sexual contact with the alleged victim to an acknowledgment of sexual contact, with the assertion that the sexual contact was consensual.

Those findings are not clearly erroneous; we defer to the lower court's assessments of credibility. *See, e.g., Stidham v. Wingo,* 482 F.2d 817, 820 (6th Cir.1973), and *King v. Beto,* 429 F.2d 221, 222 n. 1 (5th Cir.1970) (*per curiam* ), *cert. denied,* 401 U.S. 936, 91 S.Ct. 921, 28 L.Ed.2d 216 (1971); *see also Rice v. Wolff,* 513 F.2d 1280, 1293 (8th Cir. 1975), *reversed on other grounds sub nom. Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Given those findings, we agree that it was not professionally unreasonable for Mr. Nazarenus's trial lawyer to accede to the continuances requested by the government and, accordingly, to delay Mr. Nazarenus's trial. Nor, in view of Mr. Nazarenus's original contention that he never had any sexual contact with the alleged victim, do we think that it was professionally unreasonable for Mr. Nazarenus's trial lawyer to consent to DNA testing in the first place (indeed, it might have been professionally unreasonable *not* to consent, given Mr. Nazarenus's original denial of sexual contact with the alleged victim). We therefore reject Mr. Nazarenus's arguments in those respects.

## II.

■ The DNA test results on semen samples found on the alleged victim showed re-

cent sexual contact between the alleged victim and Mr. Nazarenus, and between the alleged victim and a second man. At trial, Mr. Nazarenus's lawyer did not object to the admission of those test results. Mr. Nazarenus now contends that because the DNA test results on the semen samples could have been evidence of a different assailant, his trial lawyer's failure in that respect was professionally unreasonable.

In the evidentiary hearing, Mr. Nazarenus himself testified that his defense, "all along," was consent. That defense was neither advanced nor discredited by the DNA test results on the semen samples. Under these circumstances, it was not professionally unreasonable for Mr. Nazarenus's trial lawyer not to object to the admission of the DNA test results on the semen samples. *See also Holdren v. Legursky*, 16 F.3d 57, 61 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 106, 130 L.Ed.2d 53 (1994) (where evidence is "neither more inculpatory nor less exculpatory," no prejudice to criminal defendant in its admission). We therefore reject Mr. Nazarenus's arguments with respect to the DNA test results on the semen samples.

■ Mr. Nazarenus further refers to blood samples taken from the alleged victim's jacket. Evidently, DNA testing suggested that the blood came neither from Mr. Nazarenus nor from the alleged victim (the actual report is not in the record; our conclusions about its existence and its contents are derived from the parties' briefs). Mr. Nazarenus now argues that his trial lawyer was professionally unreasonable in failing to develop a defense based on that blood, which, Mr. Nazarenus contends, could have indicated a different assailant.

At the evidentiary hearing, Mr. Nazarenus's trial lawyer testified that he did not pursue that defense because of what he believed to be an inherent inconsistency in trying to assert consensual sexual contact (to explain the DNA test results on the semen samples) simultaneously with a defense of sexual attack by a different man (the trial lawyer characterized such a strategy as "hopping back [from] one foot to the other"). Actually, we do not see such an inconsistency, since Mr. Nazarenus could have asserted

consensual sexual contact with him, followed by sexual attack by a different man.

■ We note, however, that the "touchstone of an ineffective assistance claim is the fairness of the adversary proceeding." *Lockhart v. Fretwell*, 506 U.S. 364, ——, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993). "The purpose of the ... guarantee of counsel [in the sixth amendment] is to assure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland v. Washington*, 466 U.S. 668, 691–92, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). "The defendant must [therefore] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Even assuming that Mr. Nazarenus's trial lawyer was professionally unreasonable in failing to pursue a defense of sexual attack by a man other than Mr. Nazarenus subsequent to the consensual sexual contact alleged by Mr. Nazarenus, though, given the state of the testimony, we see no reasonable probability that the jury would have accepted such a theory. Accordingly, we reject Mr. Nazarenus's arguments with respect to the DNA test results on the blood samples.

### III.

■ At trial, the government introduced evidence that Mr. Nazarenus was stopped and ticketed for speeding on the night of the alleged events. Mr. Nazarenus's trial lawyer made no objection to the admission of that evidence. Mr. Nazarenus now contends that his trial lawyer was professionally unreasonable in failing to object to the evidence of the speeding ticket, since it "painted [him] as a 'bad person,' readily allowing the jury to perceive him in a negative light."

We note that on direct appeal, a panel of this court held that the admission of evidence that Mr. Nazarenus habitually drove fast was

harmless error—that such evidence "either failed to influence the jury or had only the slightest effect on their decision." *United States v. Nazarenus,* 983 F.2d 1480, 1486 (8th Cir.1993). Even assuming, then, that evidence from the speeding ticket of Mr. Nazarenus's whereabouts at a certain time on the night of the alleged events was not relevant, *see* Fed.R.Evid. 402, or was so unfairly prejudicial as substantially to outweigh any relevance, *see* Fed.R.Evid. 403, and would have been excluded if objected to, and even assuming that Mr. Nazarenus's trial lawyer's failure to object to the admission of that evidence was therefore professionally unreasonable, we see no reasonable probability that the exclusion of that evidence would have led to a different result in the trial. In other words, even under the most damaging assumptions, we see no legally significant prejudice accruing to Mr. Nazarenus as a result of the jury's knowledge that he received a speeding ticket on the night in question. Accordingly, we reject his arguments in that respect.

## IV.

■ Mr. Nazarenus made statements to a police investigator who questioned Mr. Nazarenus about the alleged events. Mr. Nazarenus made those statements at a construction site where he was working; the police investigator found him there about a week after the alleged events. The government introduced those statements at trial. Mr. Nazarenus now contends that his trial lawyer was professionally unreasonable in not moving to suppress those statements and in not asking for a hearing to determine whether those statements were made voluntarily. Interestingly, Mr. Nazarenus does not argue that any of his statements were in fact not voluntary. Rather, he seems to argue that his trial lawyer should have moved to suppress the statements or asked for a hearing regardless of whether the voluntariness of his statements was disputed.

We reject such a strict standard. As far as we can tell, Mr. Nazarenus offers no evidence that he was in custody, otherwise restrained, intimidated, or misled by the police investigator. *See, e.g., Bennett v. Lockhart,* 39 F.3d 848, 855–56 (8th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1363, 131 L.Ed.2d 219 (1995), and *United States v. Jones,* 23 F.3d 1307, 1313 (8th Cir.1994). Mr. Nazarenus's trial lawyer would therefore have gained nothing by moving to suppress the statements in question or requesting a hearing to challenge the voluntariness of those statements. Under such circumstances, we see no professionally unreasonable conduct (or prejudice to Mr. Nazarenus, for that matter) in his trial lawyer's failure to move to suppress the statements or to request a hearing on voluntariness. Accordingly, we reject Mr. Nazarenus's arguments with respect to his statements to the police investigator.

■ Mr. Nazarenus also seems to argue that his trial lawyer was professionally unreasonable in failing to move to suppress, or to request a hearing on the voluntariness of, statements made by his co-workers to the police investigator. We do not understand that argument, since those statements were not introduced at trial; rather, Mr. Nazarenus's co-workers testified as to what Mr. Nazarenus told them, not as to what they told the police investigator. We therefore reject Mr. Nazarenus's arguments with respect to his co-workers' statements to the police investigator.

## V.

■ In order for the trial court to have jurisdiction, the alleged crime had to take place in Indian country in South Dakota. *See* 18 U.S.C. § 2241(a) and 18 U.S.C. § 7(3), § 1151, § 1152. The indictment thus charged that the alleged events took place "near Mission, in Todd County, in Indian country, in . . . South Dakota." At trial, Mr. Nazarenus, his trial lawyer, and the trial lawyer for the government signed a stipulation that "the location identified in the indictment near Mission, South Dakota, is in Indian country." Mr. Nazarenus now asserts that his trial lawyer "directed [him] to sign the stipulation . . . without explanation" and was professionally unreasonable in agreeing to that stipulation, since that agreement allowed the government to proceed without presenting any evidence of where the alleged

events occurred. The essence of Mr. Nazarenus's argument seems to be that the alleged crime could have taken place in Nebraska rather than in South Dakota.

At trial, Mr. Nazarenus testified that his sexual contact with the alleged victim was consensual and took place at the construction site where he worked. That site is in South Dakota, "in the heart of Indian country," according to undisputed testimony at the evidentiary hearing. The alleged victim, on the other hand, testified at trial that Mr. Nazarenus attacked her at a different location and that she then walked "about three miles" to the Parkhurst ranch. That ranch, also according to undisputed testimony at the evidentiary hearing, is in South Dakota, "in Indian country, and . . . the next three and a half miles were also in Indian country." Finally, it was undisputed at the evidentiary hearing that the Parkhurst ranch is three and a half miles from the South Dakota–Nebraska border.

In light of all of these facts, we are more than a little confused about Mr. Nazarenus's argument on the question of the stipulation, since it appears that any sexual contact took place in Indian country in South Dakota, no matter whose version of events the jury might have accepted. In other words, even if Mr. Nazarenus's trial lawyer was professionally unreasonable in agreeing to stipulate that the location cited in the indictment was in Indian country in South Dakota (an assumption we do not accept, in any event), there was no prejudice to Mr. Nazarenus that we can see.

Mr. Nazarenus seems to assert that perhaps the alleged victim's testimony about the distance she walked to the Parkhurst ranch could have been challenged on cross-examination. We find that possibility too speculative to support a ruling that he was prejudiced by his trial lawyer's agreement to the stipulation, especially in view of the fact that Mr. Nazarenus offers no other basis for his contention that the alleged events could have taken place in Nebraska and, indeed, himself testified at the evidentiary hearing that he knew of no time that he was outside Indian country in South Dakota when he was with the alleged victim. We therefore reject Mr.

Nazarenus's arguments with respect to the stipulation.

## VI.

■ Finally, Mr. Nazarenus contends that his trial lawyer was professionally unreasonable in advising him to testify at trial while failing to advise him of the possible consequences of doing so. Specifically, Mr. Nazarenus argues that by testifying at trial, he gave the prosecution the ability to cross-examine him about "the complete discrepancy" between his direct testimony (that he and the alleged victim had sexual contact but that it was consensual) and what he told the police investigator (that the alleged victim had not even been in his car) and to impeach him with respect to what he told two co-workers (that the alleged victim and two men were in his car but that he told all of them to get out of the car when the two men began hitting the alleged victim). The effect of all of that cross-examination was, Mr. Nazarenus concedes, "devastating," since it "[made] him a liar" in front of the jury.

At the evidentiary hearing, Mr. Nazarenus acknowledged that he knew at trial that he did not have to testify. He stated, however, that when his trial lawyer said that his testifying "might" "help the credibility with the jury," he decided to follow his lawyer's advice. We see nothing unreasonable about that advice. The alleged victim had already testified about being "badly . . . beaten and traumatized." *United States v. Nazarenus*, 983 F.2d 1480, 1485 n. 1 (8th Cir.1993). The residents at the Parkhurst ranch, the doctor who examined the alleged victim, the police investigator, two other police officers, a friend of the alleged victim, and the alleged victim's sister had also testified about the evidence of force. In light of all of that testimony and Mr. Nazarenus's contrary defense of consent, it might have been professionally unreasonable for Mr. Nazarenus's trial lawyer to encourage him *not* to testify. The lower court found that Mr. Nazarenus's trial lawyer "talked to [him] about testifying, informing him of the benefits and risks of doing so." That finding is not clearly erroneous, and we therefore reject Mr. Nazarenus's arguments about his trial lawyer's advice

with respect to Mr. Nazarenus's testifying at trial.

## VII.

For the reasons stated, we affirm the judgment of the district court.