# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3050

_____

Adetokunbo Olubunmi Adejumo

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 16, 2018
Filed: November 7, 2018

_____

Before BENTON, KELLY, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Adetokunbo Olubunmi Adejumo moved under 28 U.S.C. § 2255 to vacate his sentence for bank fraud and aggravated identity theft. His theory was that his counsel was ineffective by failing to do two things that a reasonable attorney would have done: advise him of the consequences of testifying at a pretrial-release revocation

hearing and object to the amount of loss suffered by the victims of the fraud. The district court[1] denied both claims without holding an evidentiary hearing. We affirm.

I.

Adejumo, as well as several accomplices, devised a scheme to use stolen identity information to defraud several major banks out of millions of dollars. Rather than proceed to trial, Adejumo pleaded guilty to one count of bank fraud and one count of aggravated identity theft. 18 U.S.C. §§ 1028A, 1344. In the plea agreement, he admitted "that [he and his accomplices] obtained or attempted to obtain in excess of $1,000,000 in fraudulent proceeds" and that he "believe[d]" his offense level under the Sentencing Guidelines should be increased by sixteen levels "because the loss amount was more than $1,000,000 but less than $2,500,000." The plea agreement also recommended a reduction for acceptance of responsibility.

The district court initially allowed Adejumo to remain free pending sentencing. After Adejumo was arrested for allegedly assaulting his girlfriend, however, the government asked the court to reconsider its decision and place him in prison. At the hearing to consider the government's request, Adejumo denied the assault. The magistrate judge who presided over the hearing specifically stated that he did not believe Adejumo and revoked his release.

The consequences of Adejumo's decision to testify did not end there. At sentencing, the district court concluded that Adejumo had committed perjury at the revocation hearing. The court then cited the perjury finding as reason to increase Adejumo's offense level for obstruction of justice, U.S.S.G. § 3C1.1, and deny the recommended reduction for acceptance of responsibility, *id.* § 3E1.1. The court also

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

increased Adejumo's offense level based on the loss amount specified in the plea agreement, which the court concluded was binding on the parties. *Id.* § 2B1.1(b)(1). The court sentenced Adejumo to 124 months in prison, the approximate midway point of his advisory Guidelines range. We affirmed Adejumo's sentence on direct appeal. *See United States v. Adejumo*, 772 F.3d 513, 534–38 (8th Cir. 2014).

After his conviction became final, Adejumo moved to vacate his sentence under 28 U.S.C. § 2255(a). In the motion, he presented five theories in an effort to persuade the district court that he had received ineffective assistance of counsel. The district court denied the motion without holding an evidentiary hearing. We granted him a certificate of appealability on two issues: whether defense counsel "was ineffective by failing to advise . . . Adejumo [about] the risks of testifying at the" hearing and whether defense counsel "provided ineffective assistance . . . in failing to challenge or object to the loss amount attributable to . . . Adejumo." Those are the only two issues before us.[2]

## II.

Under 28 U.S.C. § 2255, prisoners can challenge their sentences by filing a motion alleging ineffective assistance of counsel. *See, e.g.*, *Calkins v. United States*, 795 F.3d 896, 897 (8th Cir. 2015). Ordinarily, the district court must hold an evidentiary hearing and make factual findings before ruling on the merits of the motion. 28 U.S.C. § 2255(b). A hearing is unnecessary, however, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Id.*

---

[2]While Adejumo's motion for a certificate of appealability was pending, he filed another motion seeking permission to add a claim based on "newly discovered evidence" or, in the alternative, to file a second section 2255 motion. We expressly denied the motion in our January 9, 2017 order granting him a certificate of appealability. Neither the motion nor the allegedly new claim is currently before us.

To prevail on his ineffective-assistance-of-counsel claims, Adejumo must show that counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). When evaluating ineffective-assistance claims, a court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" to which a criminal defendant is entitled. *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002) (citation omitted).

A.

In the first of his two claims, Adejumo argues that defense counsel was constitutionally ineffective by failing to "advise [him] of the obvious risks of testifying," including that "if the [c]ourt disbelieved [him]," it could lengthen his overall sentence. Adejumo alleges that if he had been made aware of all the risks, he never would have testified. The addition of the obstruction-of-justice enhancement and the loss of the acceptance-of-responsibility reduction raised his advisory Guidelines range by approximately four years.

We agree with the district court that, even assuming all of Adejumo's allegations are true, he has not stated a claim of ineffective assistance of counsel. Perjury is at the heart of this issue. As Adejumo reluctantly acknowledges, we must accept the district court's finding that he committed perjury when he testified that he did not assault his girlfriend.

To the extent that Adejumo argues defense counsel was constitutionally ineffective for failing to advise him to testify truthfully, the oath he swore provided him with sufficient notice of this basic obligation. "Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely[,] to direct him to tell the truth. It would render the sanctity of the oath

-4-

quite meaningless to require admonition to adhere to it." *United States v. Mandujano*, 425 U.S. 564, 581–82 (1976) (plurality opinion) (internal quotation marks, citation, and emphasis omitted). The oath informed Adejumo that he was under a duty to tell the truth or face punishment, so defense counsel was not required to preemptively warn Adejumo of an obligation that would otherwise be made clear to him before he testified. *Cf. United States v. Day*, 285 F.3d 1167, 1171 (9th Cir. 2002) ("Day was not forced to commit perjury because his counsel [gave him mistaken advice]. By choosing . . . to testify truthfully, Day would have avoided the two-point obstruction of justice enhancement.").

To the extent that Adejumo challenges defense counsel's failure to warn him about all the possible consequences of his decision to testify, his argument fails for a different reason. Even though it may now seem easy to hypothesize that defense counsel should have done more, only with the benefit of hindsight can we identify the full array of risks that Adejumo faced by testifying. *Cf. Kokoraleis v. Gilmore*, 131 F.3d 692, 696 (7th Cir. 1997) (holding that "the right perspective [for evaluating an ineffective-assistance-of-counsel claim] is *ex ante* . . . rather than *ex post*"). Litigation is unpredictable and Adejumo's decision to testify could have played out in a number of ways, but that the magistrate judge would find that Adejumo had testified falsely and that the district court would lengthen his sentence based on the false testimony was hardly the most likely outcome. *Cf. Padilla v. Kentucky*, 559 U.S. 356, 369 (2010) ("[W]hen the deportation consequence is *truly clear*, . . . [defense counsel's] duty to give correct advice is equally clear." (emphasis added)); *Day*, 285 F.3d at 1171–72 (rejecting an ineffective-assistance claim that alleged that counsel's mistaken advice caused the defendant to give perjured testimony and receive an obstruction-of-justice enhancement). After all, witnesses are frequently disbelieved, but rarely are they punished for perjury. *Cf. United States v. Dunnigan*, 507 U.S. 87, 95 (1993).

Our task here is not to second-guess every decision, but rather to ask what a reasonable lawyer would have done under the circumstances. *See Strickland*, 466 U.S. at 688–89. The dissent would require more of Adejumo's lawyer because the increased Guidelines range was legally authorized and might have caught a lay person by surprise. The first point is always true. No lawyer needs to warn a client that the judge may do something the law does not allow. And the second point is true of any number of risks that may arise in an ongoing criminal case. But a reasonable lawyer cannot be expected to provide a client with a laundry list of potential bad outcomes, no matter how remote or speculative, for every decision faced during litigation—nor would it be helpful for clients if attorneys were to do so.

By rejecting Adejumo's ineffective-assistance-of-counsel claim on these facts, we do not mean to suggest that an attorney can allow a client to take the stand without having *any* discussion about the decision to testify. Under the circumstances, however, defense counsel did not need to warn Adejumo of the speculative risk that false testimony would lead to the unusual chain of events that occurred here. Accordingly, defense counsel's handling of Adejumo's decision to testify did not "f[all] below an objective standard of reasonableness." *Id.* at 688.

B.

Adejumo's other claim alleges that defense counsel provided ineffective assistance by conceding the amount of loss at the sentencing hearing. Although the parties agreed upon the amount when Adejumo pleaded guilty, Adejumo claims that defense counsel still should have objected. Requiring the government to prove the loss amount, according to Adejumo, would have resulted in a lower Guidelines range because there was insufficient evidence to prove that the total losses from the fraud exceeded $1 million. *See* U.S.S.G. § 2B1.1(b)(1) & cmt. n.3(A)(i)–(ii) (requiring a court to increase the offense level based on the amount of money a defendant has stolen or tried to steal).

The plea agreement establishes that defense counsel's concession was objectively reasonable under the circumstances. In two different spots, Adejumo admitted trying to steal more than $1 million, a sum that he "believe[d]" should result in a sixteen-level increase in his offense level. And Adejumo did not expressly reserve the right to challenge the loss amount. Accordingly, when the district court asked whether Adejumo was "bound by" the loss amount specified in the plea agreement, defense counsel committed no obvious error by responding, "yes."

To be sure, some of the statements at the change-of-plea hearing were confusing and may have left Adejumo with the mistaken impression that the loss amount was still an open question. For example, the prosecutor told Adejumo, "[y]our lawyer is going to argue about loss, but we're going to tell the [c]ourt that [the offense level] should be increased by 16 levels because the loss amount is from 1 million to 2.5 million." This statement was not a concession, as Adejumo now claims, that he was free to challenge the loss calculation. *Cf. Thompson v. United States*, 872 F.3d 560, 566 (8th Cir. 2017) (declining to modify a plea agreement without a clear statement from the prosecutor). Rather, it acknowledged the possibility that defense counsel would in fact try to challenge the loss amount, *notwithstanding* the clear terms of the plea agreement.

Regardless, later in the hearing, the district court tried to clear up any remaining confusion by asking defense counsel whether he actually "disagree[d]" with the loss amount arrived at in the plea agreement. He immediately said that he did not. By the end of the change-of-plea hearing, it should have been clear to everyone involved that the court would calculate Adejumo's sentence based on the loss amount specified in the plea agreement, not some other amount yet to be determined. Accordingly, when defense counsel conceded that Adejumo was bound by his admission that he tried to steal over $1 million, counsel's performance fell within "the wide range of reasonable professional assistance" to which Adejumo was entitled. *Johnson*, 278 F.3d at 842.

-7-

* * *

Because both of Adejumo's ineffective-assistance-of-counsel claims fail as a matter of law, the district court did not err in denying them without first holding an evidentiary hearing. *See Engelen v. United States*, 68 F.3d 238, 240–41 (8th Cir. 1995).

III.

We affirm the judgment of the district court.

KELLY, Circuit Judge, dissenting.

A district court shall "grant a prompt hearing" on the filing of a motion pursuant to § 2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Adejumo has alleged that his attorney was ineffective in failing to advise him of the risks of testifying at his pretrial release revocation hearing, and in failing to challenge the loss amount for purposes of calculating his sentencing Guidelines range. Because I believe the files and records of this case do not "conclusively show" that Adejumo is not entitled to relief on these grounds, I would remand this matter to the district court for an evidentiary hearing. See, e.g., Roundtree v. United States, 751 F.3d 923, 927 (8th Cir. 2014) (remanding for evidentiary hearing because record did not conclusively establish § 2255 movant was entitled to no relief).

The risk that testifying will result in receiving an obstruction-of-justice enhancement and the loss of an acceptance-of-responsibility reduction is not so remote or speculative that a reasonable lawyer cannot be expected to advise his client of that risk. The sentencing Guidelines commentary states that the obstruction-of-justice enhancement applies to "committing, suborning, or attempting to suborn

-8-

perjury" as well as "providing materially false information to a judge or magistrate judge." USSG § 3C1.1 cmt. n.4(B), (F). It may be that witnesses are rarely charged with perjury. But it is not at all unusual for a defendant to receive an enhancement for obstruction of justice based on testimony that a district court finds perjurious. Moreover, the commentary to the acceptance-of-responsibility reduction provides that "[c]onduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." USSG § 3E1.1 cmt. n.4. Thus, the risks associated with testifying extend beyond the obstruction-of-justice enhancement: If a defendant receives an enhancement pursuant to § 3C1.1 for testimony the court deems is materially false or amounts to perjury, he also forfeits any reasonable opportunity to earn a two- or three-level reduction in his offense level for acceptance of responsibility. See Adejumo, 772 F.3d at 536 ("It is only in 'extraordinary cases' that a defendant who has been found to have obstructed justice is eligible for the acceptance of responsibility reduction." (quoting United States v. Hutterer, 706 F.3d 921, 925 (8th Cir. 2013))). Even assuming a lay person understands the consequences of committing perjury, it is unreasonable to think that a criminal defendant is sufficiently fluent in the federal sentencing Guidelines to understand the full risks associated with testifying on his own behalf.

Also relevant is the fact that Adejumo testified at a hearing on the petition to revoke his pretrial release. The subject of the testimony was an alleged altercation with his girlfriend, a topic that on its face seemed unrelated to the fraud charges Adejumo was facing. Taking an oath warns a defendant, like any other witness, that he must tell the truth or else possibly face a criminal charge of perjury. But the oath is no substitute for a defense attorney discussing with a client his testimony and advising him of the risks of that testimony—risks that in this case are separate and apart from the freestanding perjury charge. Cf. Nazarenus v. United States, 69 F.3d 1391, 1397 (8th Cir. 1995) (denying § 2255 motion after evidentiary hearing showing, among other things, that lawyer "talked to [his client] about testifying, informing him of the benefits and risks of doing so").

-9-

If Adejumo's counsel failed to discuss the risks and possible benefits of testifying at his revocation hearing, that would fall below an objective standard of reasonableness. Adejumo could also show prejudice: By testifying as he did, Adejumo both lost a three-level reduction in his offense level for acceptance of responsibility and received a two-level enhancement for obstruction of justice, resulting in a significantly higher advisory sentencing Guidelines range.

An evidentiary hearing was also warranted on Adejumo's claim that his counsel was ineffective for not continuing to challenge the loss amount for which he should be held responsible. Adejumo asserts that he always understood that he would be able to challenge the loss amount and this is part of what induced him to plead guilty. "Where a plea agreement is ambiguous, the ambiguities are construed against the government." Margalli-Olvera v. INS, 43 F.3d 345, 353 (8th Cir. 1994). And "[a]ny promise made by the Government that constitutes a significant part of the defendant's inducement or consideration for making the plea agreement must be fulfilled to satisfy due process." United States v. Stobaugh, 420 F.3d 796, 800 (8th Cir. 2005). As the court notes, the government made several statements at the change-of-plea hearing that were confusing and may have left Adejumo with the understanding that the loss amount could be disputed. In light of the government's statements, Adejumo's counsel's response to the district court that there was no disagreement about paragraph 6(b) of the plea agreement—the provision discussing the loss amount—could be interpreted to mean that the parties agreed that Adejumo

could contest the loss amount as one of "certain positions."[3] Indeed, as this court found previously:

> When Adejumo objected to the amount of loss recommended in the presentence report, the government did not contest his ability to do so. At sentencing, however, Adejumo agreed with the court that he was bound by the stipulation in his plea agreement. *Because he so agreed*, Adejumo is precluded from disputing the loss amount on appeal.

Adejumo, 772 F.3d at 538 (emphasis added).

If counsel's performance fell below an objective standard of reasonableness on this issue, an evidentiary hearing would also be necessary to determine whether Adejumo can show prejudice. Adejumo pleaded guilty to one count of bank fraud

---

[3]The court focuses on the following exchange:

> The district court: Counsel, is that your understanding of the plea agreement?
>
> Counsel for Adejumo: Yes, Your Honor, except to the extent that in Count 8 in all of the categories, (a) through (i), that our understanding is the defendant would be allowed to argue certain positions.
>
> Prosecutor: That's true, Your Honor.
>
> The district court: Well, let's go to paragraph 6 so it's clear. Count 8, paragraphs (a), (b), there's no disagreement on those two paragraphs, is that correct?
>
> Counsel for Adejumo: Correct, Your Honor.

and one count of aggravated identity theft. He did not plead guilty to a conspiracy. The factual basis in the plea agreement limited Adejumo's relevant conduct to the years 2008–2009, and the parties agreed that Adejumo "and others" fraudulently obtained or attempted to obtain more than $1,000,000. See also United States v. Adejumo, 848 F.3d 868, 871 (8th Cir. 2017) (vacating restitution order in this case because "the government's evidence was clearly insufficient to show the ultimate losses suffered by the victims"). Having presented a colorable claim for ineffective assistance of counsel as well as disputed facts, Adejumo was entitled to an evidentiary hearing. Accordingly, I respectfully dissent.

_____