**UNITED STATES of America, Appellee,**

v.

**Reginald S. CARR, Appellant.**

No. 94–3530.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1995.

Decided Oct. 6, 1995.

Rehearing Denied Nov. 13, 1995.

Theresa Burke, St. Louis, Missouri, argued for appellant.

Joseph Landolt, St. Louis, Missouri, argued (Mary Jane Lyle, St. Louis, Missouri and Edward L. Dowd, Jr., as United States Attorney, on the brief), for appellee.

Before WOLLMAN, MAGILL, and LOKEN, Circuit Judges.

WOLLMAN, Circuit Judge.

Reginald Carr was convicted by a jury of first-degree murder on federal property, in violation of 18 U.S.C. §§ 2, 7(3) and 18 U.S.C. § 1111 (1988). On appeal, Carr alleges that the district court[1] erred in admitting

hearsay evidence, disallowing testimony, excusing witnesses on Fifth Amendment grounds, refusing to suppress an identification of him, and admitting photographs of the victim. He also challenges the government's use of peremptory strikes, argues that his trial counsel was ineffective, and questions the sufficiency of the evidence against him. We affirm.

On August 5, 1993, Alice Knop was shot and killed during a robbery in a parking garage near the St. Louis Arch. Ventimiglia testified that he and Knop had driven to the riverfront to see the flooding. While he and Ms. Knop were seated in the car, Ventimiglia saw two men enter the garage. The men separated, and one walked toward the garage entrance. Ventimiglia lost sight of the second man until he appeared at the car door on Knop's side, pointed a gun at her, and indicated that he wanted money. Ventimiglia pulled bills out of his pocket three times and handed them to the man, who said "not enough" and shot Knop three times. The assailant then shut the car door and exited the garage.

Ventimiglia described the attacker to investigators as tall and thin, wearing a white shirt with three-quarter length green sleeves and what he thought was a dark green baseball hat worn backwards. He also helped prepare a composite drawing that closely resembled Carr. Ventimiglia saw two lineups that did not contain Carr and chose no one from those lineups. He picked Carr as the attacker from a photo lineup and a live lineup, and he picked Cole, the lookout, from another live lineup.

The government introduced the testimony of Morris Stroud, who stated that on August 5 Carr had been a passenger in his automobile, along with Harrison Cole and John Loyd. Cole brought along his gun, which all four men handled during the evening. Stroud testified that Carr suggested robbing someone because he did not have money to pay for beer. They spotted Ventimiglia's car with Florida license plates and followed it to the parking garage. Carr took the gun into

---

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

the garage to rob the victims, Cole went with him to act as the lookout, and Loyd got out to act as a second lookout. Stroud circled the block and picked up Cole, who appeared disturbed and hysterical, saying "Carr shot the victims." Stroud circled the block again and picked up Carr, who was not wearing his shirt or wave cap. Carr said that he "shot him and her" because they were giving him the money too.slowly and because he didn't like Europeans because they owed him anyway. The men stopped at a liquor store to buy more beer, then split the rest of the money. They drove back to retrieve the gun, but because the police were already in the area, they went home.

The government also introduced evidence that Ricky Smelser, a security guard at a nearby business, had seen a tall, slender man walk quickly from the area of the Arch parking garage, take off his shirt and wave cap and throw them on the ground, and put his gun in a trash can. Smelser flagged down a police officer, who recovered the items. The clothing matched the description given by Ventimiglia, and the bullets that killed Alice Knop had been fired from the gun that was recovered.

## I.

Carr first alleges that the district court erroneously admitted hearsay evidence at trial. He alleges that Stroud's testimony about statements made by Cole and Loyd to Stroud did not qualify as statements by a coconspirator under Federal Rule of Evidence 801(d)(2)(E). Specifically, he challenges Stroud's testimony that Cole said, "Carr shot the victims," and Stroud's testimony that Cole and Loyd asked him to go back to retrieve the gun.

█ A statement is not hearsay if made "by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). To satisfy the rule, the government must demonstrate that a conspiracy existed of which Carr and the declarants were a part and that the declarations were made during the course and in furtherance of the conspiracy. *See United States v. Ortiz–Martinez*, 1 F.3d 662, 673

(8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 355, 126 L.Ed.2d 319 (1993).

█ Stroud testified that Cole acted as the first lookout and Loyd acted as the second lookout, that they both knew Carr intended to rob the victims, that they split the proceeds of the robbery, and that they all attempted to retrieve the gun used in the shooting. On these facts, the district court properly found that a conspiracy to commit a robbery existed. *See United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir.1978) (preponderance of the evidence standard). The fact that the object of the conspiracy was robbery rather than murder does not affect the admissibility of the evidence, as members of a conspiracy are liable for crimes committed by coconspirators in furtherance of the conspiracy. *See United States v. Williams,* 902 F.2d 675, 678 (8th Cir.1990). There is no requirement that Loyd be charged with the crime to be a coconspirator. *See United States v. Mitchell,* 31 F.3d 628, 631 (8th Cir.1994). Thus, all four were coconspirators. Finally, the statements were made in furtherance of the conspiracy. Cole's statement about the shooting revealed the progress of the conspiracy, *see United States v. Escobar,* 50 F.3d 1414, 1423 (8th Cir.1995), and Cole and Loyd's request to retrieve the gun was an effort to prevent arrest, *see United States v. Garcia,* 893 F.2d 188, 190 (8th Cir.1990).

█ Carr also objects to the admission of Stroud's testimony that a prison "floor man," when handing him notes in prison, stated that the notes were from Reginald Carr. Stroud received two notes and a court case through the floor man while he was in prison. Stroud understood the notes to mean that Carr would not implicate him, and the underlined portions of the case stood for the proposition that an aider and abettor is guilty of the crime committed. The government argued that the challenged testimony did not go to the truth of the matter asserted, but was introduced only to show why Stroud took the notes. Although the government used Carr's authorship of the notes as evidence that Carr committed the crime, the government introduced fingerprint and handwriting expert testimony to prove that Carr wrote the notes. We find that the admission of this

testimony did not influence the verdict, and thus any error was harmless. *See Mitchell,* 31 F.3d at 632 (evidentiary error harmless if no substantial rights of defendant were affected and error had slight or no influence on verdict).

## II.

■ Carr next argues that the trial court erred in refusing to allow him to introduce evidence that Stroud and the police's initial suspect, Gregory Belger, had committed a robbery together a week earlier. He argues that, although Stroud had not yet been convicted of the crime, the evidence would have indicated a "frame up" by showing Stroud's motive was to protect Belger and that the evidence would have affected Stroud's credibility as a witness.

We find that the trial court did not abuse its discretion in refusing to allow the evidence. *See McGautha v. Jackson County, Mo. Collections Dep't,* 36 F.3d 53, 57 (8th Cir.1994) (standard of review), *cert. denied,* —— U.S. ——, 115 S.Ct. 2561, 132 L.Ed.2d 814 (1995). Although the defense may present evidence of other acts to prove the motive of a witness under Federal Rule of Evidence 404(b), or to attack the credibility of a witness under Federal Rule of Evidence 608(b), the court has discretion under Federal Rule of Evidence 403 to exclude the evidence. The court could have reasonably found that the unrelated criminal actions taken by Stroud and Belger a week earlier would invite unwarranted speculation and could confuse the issues and mislead the jury, given the tenuous link between Stroud and Belger. *United States v. Ford,* 17 F.3d 1100, 1103 (8th Cir.1994) (evidence concerning prior felony could have distracted jury from its task without adding probative information). Because Stroud admitted that he set out to help commit a robbery in this case and that he first denied his involvement to the police when he was arrested, evidence of other prior robberies and his attempted use of a stolen credit card would have merely been cumulative to impeach his credibility and would have resulted in delay and confusion. *See* Fed.R.Evid. 403; *United States v. Lynch,* 800 F.2d 765, 770 (8th Cir.1986), *cert.*

*denied,* 479 U.S. 1094, and 481 U.S. 1022, 107 S.Ct. 1310 and 107 S.Ct. 1907, 94 L.Ed.2d 164 and 95 L.Ed.2d 513 (1987).

## III.

■ Carr next argues that the government improperly used peremptory challenges to strike three black jurors based on their race, in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Under *Batson,* after the defendant makes a prima facie case of purposeful discrimination in the government's use of peremptory challenges, the burden shifts to the government to offer a race neutral explanation for the strikes. The defendant may then show that the government's reasons are pretextual, and the court's ultimate finding on the discrimination issue will be set aside only if clearly erroneous. *United States v. Jenkins,* 52 F.3d 743, 746 (8th Cir.1995).

■ Upon Carr's objection to the government's use of a peremptory challenge to strike Juror # 19, the district court stated that it did not "have any problem with" striking the juror, whose son was incarcerated. The court did not require the government to articulate a race-neutral reason for the strike, instead implicitly finding that the defendant did not make a prima facie case of purposeful discrimination. Because the court noted a valid reason for the strike, *see United States v. Jackson,* 914 F.2d 1050, 1052–53 (8th Cir.1990) (incarcerated family member was permissible reason), the district court did not clearly err in finding no prima facie case of discrimination. *See Devose v. Norris,* 53 F.3d 201, 204 (8th Cir.1995) (for prima facie case, defendant must show striking member of same racial group and "other relevant circumstances" raise inference of discrimination) (internal quotations and citations omitted).

■ The government stated that Juror # 4 was dismissed because she was unemployed and rented, rather than owned, her residence, thus demonstrating that she had insubstantial ties to the community. The government stated that a white juror had been dismissed for the same reasons. The government stated that Juror # 38 was dis-

missed because she had the least impressive work record of the three potential alternate jurors. Carr did not attempt to persuade the district court that the government's reasons were pretextual. We find that the district court did not clearly err in finding the government's reasons for striking these jurors permissible and not pretextual. *See Elem v. Purkett,* 64 F.3d 1195, 1201 (8th Cir.1995) (upholding facially race-neutral reason where petitioner made no attempt to show pretext); *United States v. Atkins,* 25 F.3d 1401, 1406 (8th Cir.) (sporadic work history showing lack of attachment to community was permissible reason), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 322 (1994).

## IV.

 Carr argues that the district court erred in excusing two witnesses, John Loyd and Tiffany Edwards, from testifying on Fifth Amendment grounds, without balancing their privilege against his Sixth Amendment right to compulsory process. The defendant's Sixth Amendment right, however, does not include the right to compel a witness to waive his Fifth Amendment privilege. *United States v. Robaina,* 39 F.3d 858, 862 (8th Cir.1994).

■ Loyd's appointed counsel stated that Loyd would exercise his privilege against self-incrimination. Although Loyd's videotaped statement indicated that he had stayed in the car during the robbery/murder, Stroud testified that Loyd was a lookout during the crime. Thus, Loyd's possibility of self-incrimination was not "remote or speculative." *Cf. Zicarelli v. New Jersey State Comm'n of Investigation,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972). In addition, the district court found that Loyd's testimony would not have been favorable to Carr's defense. Thus, the district court did not err in allowing Loyd to plead the Fifth Amendment. *See Robaina,* 39 F.3d at 862.

■ Edwards had previously identified the articles of clothing found as belonging to Gregory Belger, but later recanted and told investigators that she had been under the influence of drugs when she made the statement. Her appointed counsel told the court he would recommend that she take the Fifth Amendment because she could be open to criminal prosecution and also stated that he believed she might be under the influence of "some type of substance." Carr stated that he would not question Edwards regarding possible drug use, but the government stated that it would need to cross-examine her about drug use to determine her competency to testify. Given Edwards's recantation and possible incompetency to testify, the district court did not err in finding the government had a legitimate need to cross-examine Edwards regarding drug use and in excusing her from testifying. *See United States v. Edmond,* 52 F.3d 1080, 1110 (D.C.Cir.1995).

## V.

■ We will not consider Carr's ineffective assistance of counsel claim on direct appeal, as it has not been presented to the district court and is best raised in a 28 U.S.C. § 2255 motion. *See United States v. Martin,* 59 F.3d 767, 771 (8th Cir.1995). We have carefully considered all additional points raised by Carr, and we find no reversible error.

We express our appreciation to court-appointed counsel for her zealous efforts on Carr's behalf in this appeal.

The conviction is affirmed.