```
                              --------------
                              No. 96-2324EMSL
                              --------------
```

United States of America,          *
                                    *
          Appellee,                 *      On Appeal from the United
                                    *      States District Court
      v.                            *      for the Eastern District
                                    *      of Missouri
John E. Gibson,                     *
                                    *
          Appellant.                *
                                    *
                                    *

```
                              --------------
```

Submitted: November 18, 1996

Filed: January 30, 1997

```
                              --------------
```

Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge, and
LONGSTAFF,* District Judge.

```
                              --------------
```

RONALD E. LONGSTAFF, District Judge.

Appellant John E. Gibson was charged with one count of conspiracy
to distribute and possession with intent to distribute in excess of one
kilogram of heroin in violation of 21 U.S.C. § § 841(a)(1) and 846, and
two counts of distributing heroin, in violation of 21 U.S.C. §
841(a)(1).  Following a trial, a jury returned a verdict finding Gibson
guilty on all counts.  On May 16, 1996, the district court[1] sentenced
Gibson to 240 months of

---

* The Honorable Ronald E. Longstaff, United States District
Judge for the Southern District of Iowa, sitting by designation.

[1] The Honorable George F. Gunn, United States District Judge
for the Eastern District of Missouri.

imprisonment. In this direct appeal, Gibson challenges his conviction on seven grounds and his sentencing on one ground.

I.

The evidence at trial indicated that Gibson was involved in the transportation of Mexican black tar heroin from Los Angeles, California to St. Louis, Missouri for distribution. Steven Gibson, the appellant's nephew and a former resident of St. Louis who was then living in Atlanta, Georgia, was also involved in the distribution and transportation of the heroin.

John Gibson, a resident of Denver, Colorado, and Steven Gibson made arrangements for transporting substantial sums of United States currency from St. Louis to Los Angeles by using three female couriers. The couriers would fly to Los Angeles where John Gibson would purchase black tar heroin using the money brought by the couriers. John Gibson would then package the heroin for transportation by the couriers back to St. Louis.

The three couriers testified at trial regarding the conspiracy. In addition, there was a controlled purchase of heroin made from John Gibson in late October of 1993 and another made on May 2, 1994. Surveillance was conducted on these purchases by law enforcement authorities and photographs were taken. The purchaser of the heroin in the controlled buys, Bernard Boles, testified at trial regarding the controlled buys and other drug transactions. Phone conversations between Boles and John Gibson were recorded. In addition, the evidence at trial included hotel records, phone toll records, clone pager intercepts, telephone pen register records, "sky pager" records and car rental receipts.

Gibson first contends that the Government violated his constitutional right to equal protection of the laws by exercising its peremptory challenges to exclude two African American venire persons. The district court permitted the Government six peremptory challenges and Gibson ten peremptory challenges in selecting twelve jurors to hear the case. Of the jurors eligible after strikes for cause, two were African-American and thirty were white. The Government removed the two African-American jurors, No. 11 and No. 17, with two of its peremptory challenges.

After the Government made its peremptory strikes, Gibson made a Batson objection to the Government's peremptory challenge to Jurors No. 11 and No. 17. The Government responded by asserting that it struck Juror No. 11 because she had indicated that she had been the victim of a rape and had received unfair treatment by law enforcement officials regarding the incident. The Government indicated that it struck Juror No. 17 because he was a renter, he had a low education level, he was employed in jobs that indicated that he would not have a great stake in the community, he was single with three children, and he appeared uninterested. After the Government gave its explanations for striking the two jurors, Gibson did not argue that the reasons provided by the Government were pretextual or that similarly situated whites were not struck. The district court concluded that the reasons put forth by the Government were valid, non-discriminatory reasons for striking the jurors and allowed the Government's peremptory strikes to Jurors No. 11 and No. 17.

In Batson v. Kentucky, 476 U.S. 79, 89 (1986), the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will

be unable impartially to consider the State's case against a black defendant."  In evaluating claims of discrimination under <u>Batson</u>:

> First, the defendant must make a prima facie showing the prosecutor has exercised peremptory challenges on the basis of race.  Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question.  Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

<u>Hernandez v. New York</u>, 500 U.S. 352, 358-59 (1991); <u>U.S. v. Feemster</u>, 98 F.3d 1089, 1091 (8th Cir. 1996).  Because the evaluation of the prosecutor's state of mind lies within a trial judge's province, a district court's finding on whether a peremptory challenge was exercised for a racially discriminatory reason is reversed only if clearly erroneous.  <u>U.S. v. Darden</u>, 70 F.3d 1507, 1531 (8th Cir.) (citations omitted), <u>cert. denied</u>, 116 S. Ct. 1449 (1996); <u>U.S. v. Carr</u>, 67 F.3d 171, 175 (8th Cir.), <u>cert. denied</u>, 116 S. Ct. 1285 (1996).

The Government's peremptory strike of Juror No. 11 was clearly for a race-neutral reason.  Juror No. 11 had been the victim of a serious crime and expressed her dissatisfaction with law enforcement officials' treatment of the situation.  Likewise, the Government's reasons for its peremptory strike of Juror No. 17 were nondiscriminatory.  First, the Government indicated that it exercised its peremptory challenge on Juror No. 17 because he did not have a significant stake in the community.[2]  <u>See</u> <u>United States v. Atkins</u>, 25 F.3d 1401, 1406 (8th Cir.) (juror lacking an

---

[2]     The Government indicated that two of the reasons it struck Juror No. 17 were that he was a renter and due to his employment.  These factors have been found to be characteristic of individuals who do not have a significant stake in their community.  <u>See</u> <u>United States v. Carr</u>, 67 F.3d 171, 176 (8th Cir.) (juror who rented home lacked attachment to community), <u>cert. denied</u>, 116 S. Ct. 1285 (1996); <u>United States v. Day</u>, 949 F.2d 973, 979 (8th Cir. 1991) (sporadic work history and lack of property ownership indicating a lack of community attachment).

attachment to the community was validly stricken from the jury by the government), cert. denied, 115 S. Ct. 371 (1994); United States v. Jackson, 914 F.2d 1050, 1052-53 (8th Cir. 1990) (government seeking jurors with commitment to the community is race-neutral reason for exercising its peremptory challenges).  Second, the Government stated that Juror No. 17 appeared uninterested in the trial proceedings.  See Usman v. United States, 498 U.S. 863 (1990) ("intuitive assumptions that are not fairly quantifiable" are valid, race-neutral reasons); United States v. Swinney, 970 F.2d 494, 496 (8th Cir.) (Government may exercise its peremptory strikes "using intuitive guesses about jurors' attitudes towards the Government and the subject matter of the case, relying on the jurors' ... general demeanor, and personal traits"), cert. denied, 506 U.S. 1011 (1992).  Third, the Government indicated that Juror No. 17 was not well educated.  See U.S. v. Hunter, 86 F.3d 679, 683 (7th Cir. 1996) (education level is a valid, nondiscriminatory factor), cert. denied, 117 S. Ct. 443 (1996); U.S. v. Hughes, 911 F.2d 113 (8th Cir. 1990) (education level of the juror is a valid characteristic that may be considered by the government).  Lastly, the Government stated that it exercised its peremptory strike on Juror No. 17 because he was single yet had three children.  see also U.S. v. Thomas, 971 F.2d 147, (8th Cir. 1992) (juror's marital status is a valid characteristic that may be considered by government), cert. denied, 510 U.S. 839 (1993); U.S. v. Prine, 909 F.2d 1109, (8th Cir. 1990) (same), cert. denied, 499 U.S. 924 (1991).

     As a result of the Government's articulated race-neutral reasons for its peremptory strikes, the burden then returned to Gibson to demonstrate pretext.  United States v. Elliott, 89 F.3d 1360, 1366 (8th Cir. 1996) (citation omitted); United States v. Scott, 26 F.3d 1458, 1467 (8th Cir.), cert. denied, 115 S. Ct. 584 (1994).  As previously indicated, at the trial level Gibson failed to present any arguments that the Government's articulated reasons for striking the jurors were pretextual or otherwise

5

discriminatory. "[W]here the opponent of the peremptory strikes makes no attempt to demonstrate pretext," facially neutral reasons for exercising peremptory strikes will he upheld. Elliott, 89 F.3d at 1366.

For the first time, on appeal, Gibson attempts to demonstrate that the Government's reasons for exercising its peremptory strikes were pretextual by demonstrating that similarly situated white jurors were not struck by the Government. However, a "similarly situated" argument is untimely and cannot be made if it is raised for the first time on appeal rather than at the trial level. Id. at 1367. Based on the foregoing, the Court concludes that the district court did not err in concluding that the Government's use of its peremptory challenges to strike Juror No. 11 and Juror No. 17 were not exercised for a racially discriminatory reason.

## III.

Gibson's second argument on appeal is that the district court erred by failing to strike Juror No. 28 for cause. During voir dire, Juror No. 28 indicated that her father worked for the St. Louis City Police Department and after retirement, as a Marshall. In response to a question about her ability to judge a witness' credibility, Juror No. 28 stated that since she grew up around policemen, she may have a tendency to give a little bit more credibility to them. Gibson challenged Juror No. 28 for cause, but the district court denied the challenge, determining that the juror could consider the evidence presented impartially. Gibson asserts that this statement, along with some other statements, necessitated the removal of Juror No. 28 for cause from the jury panel.

The district court's refusal to strike a juror for cause is subject to an abuse of discretion standard. Elliott, 89 F.3d at

6

1365 (citing <u>United States v. Tibesar</u>, 894 F.2d 317, 319 (8th Cir.), <u>cert. denied</u>, 498 U.S. 825 (1990)).  Even though Juror No. 28 was not removed for cause, Gibson exercised his right to strike her with a peremptory challenge.  Due to the removal of Juror No. 28 through a peremptory challenge, the allegedly impartial juror "was thereby removed from the jury as effectively as if the trial court had excused [her] for cause."  <u>United States v. Cruz</u>, 993 F.2d 164, 168 (8th Cir. 1993) (citing <u>Ross v. Oklahoma</u>, 487 U.S. 81, 86 (1988)).  Gibson has failed to claim that any of the jurors who sat at his trial were not impartial. As a result, the failure of the district court to strike Juror No. 28 for cause cannot be prejudicial error because Gibson "failed to establish that the jury was not impartial or that he suffered any prejudice from the denial of his challenge for cause."  <u>Id.</u> at 169.

IV.

Gibson's third argument on appeal is that the district court abused its discretion by refusing to instruct the jury using Eighth Circuit Pattern Instruction 4.05 regarding the testimony of an accomplice.  Specifically, Gibson asserts that the district court erred by failing to add the last sentence of Instruction No. 4.05 because it requires the jury to consider the testimony of an accomplice with greater caution than other witnesses.  This Court reviews the district court's determination of whether to submit a particular jury instruction under an abuse of discretion standard.  <u>United States v. Rockelman</u>, 49 F.3d 418, 423 (8th Cir. 1995).

This Court had held that the language referred to by Gibson is only required when the testifying witness' statements regarding the defendant's participation in a crime are uncorroborated.  <u>United States v. Schoenfeld</u>, 867 F.2d 1059, 1062 (8th Cir. 1989) (citing <u>United States v. McGinnis</u>, 783 F.2d 755,

7

758 (8th Cir. 1989)).  However, where an accomplice's "testimony is corroborated the absence of such language is not error."  Id.

In the present case, it is clear that the testimony of the accomplices was corroborated.  Each of the courier's testimony was corroborated with that of the others and the testimony of Bernard Boles, a purchaser of heroin from Gibson.  In addition, there were photographs of the couriers with Gibson, "sky pager" records, hotel records, telephone records, and rental car records.  Accordingly, due to the presence of the evidence corroborating the testimony of the accomplices, the district court did not abuse its discretion by refusing to instruct the jury using the last sentence of Eighth Circuit Pattern Instruction 4.05 as to the testimony of an accomplice.

V.

Gibson next argues that the district court erred by giving Jury Instruction No. 11[3] defining reasonable doubt.  Gibson argues that the first phrase in the instruction is an incorrect statement of the law.

This Court has previously approved the use of this

---

[3]    Jury Instruction No. 11 was submitted by the Government from the Manual of Model Criminal Jury Instructions for District Courts of the Eighth Circuit, Jury Instruction 3.11 (1994).  The Instruction states:

> A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence.  A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

8

instruction.  <u>United States v. Simms</u>, 18 F.3d 588, 593 (8th Cir. 1994);
<u>United States v. Mabry</u>, 3 F.3d 244, 249 (8th Cir. 1993), <u>cert. denied</u>,
114 S. Ct. 1403 (1994).  Moreover, this Court has rejected a challenge
to the specific portion of the instruction which Gibson now objects to.
<u>United States v. Harris</u>, 974 F.2d 84, 85 (8th Cir. 1992).  Accordingly,
the district court did not commit error by giving Jury Instruction No.
11.

VI.

Gibson's fifth argument is that the district court erred by giving
Jury Instruction No. 14 defining possession.  Jury Instruction No. 14
was submitted by the Government from the Manual of Model Criminal Jury
Instructions for District Courts of the Eighth Circuit, Jury Instruction
8.02 (1994).  Gibson argues that the definition provided in this
instruction confused the jury by indicating that "constructive
possession is not really possession."

"An instruction that correctly states the law is not erroneously
given even if the defendant did not want it ... as long as it relates to
issues in the case and facts developed by the evidence."  <u>United States
v. Nazarenus</u>, 983 F.2d 1480, 1487 (8th Cir. 1993).  Instruction No. 14
"presents a legally correct definition of possession."  <u>United States v.
Ali</u>, 63 F.3d 710, 716 (8th Cir. 1995).  Also, the evidence at trial
indicated that Gibson both actually and constructively, through the use
of the couriers, possessed the heroin.  As a result, the district court
did not commit error by giving Jury Instruction No. 14.

VII.

Gibson next argues that the district court erred by allowing
witness Roberta Farr to testify regarding statements made by him.
During trial, Roberta Farr, a courier in the conspiracy,

testified that Gibson made statements to her concerning whether his nephew, Stephen Gibson, or herself would become a government informant if caught by law enforcement officers.  These statements were made prior to Farr's arrest.  Gibson contends that Farr's statements were improperly allowed at trial because the Government failed to comply with Federal Rule of Criminal Procedure 16.

Pursuant to Federal Rule of Criminal Procedure 16, the Government must disclose to a defendant "that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent ...." Fed.R.Crim.P. 16(a)(1)(A).  In the present case, Roberta Farr was not an agent of the Government at the time Gibson made the statement to her. As a result, Gibson's statements to Farr were not subject to the disclosure requirement of Federal Rule of Criminal Procedure 16. See also U.S. v. Hoelscher, 914 F.2d 1527, 1535 (8th Cir. 1990) ("[Federal Rule of Criminal Procedure 16(a)(1)(A)] does not cover testimony by a government witness as to an oral statement by a conspirator in the course of the conspiracy."), cert. denied, 498 U.S. 1090 (1991). Accordingly, the district court did not err by allowing Roberta Farr to testify regarding Gibson's concerns about Farr or Stephen Gibson becoming government informants.

## VIII

Gibson's seventh argument on appeal is that the district court erred by allowing Government witness Richard Bauer, a Special Agent of the Drug Enforcement Agency extensively trained in narcotics investigations, to testify regarding the effects that 36% and 57% pure heroin would have upon an individual.  Specifically, Bauer indicated that use of heroin at these levels would result in "death--pretty much instantaneous."  Gibson

asserts that Bauer's statements were not relevant and were "designed to inflame the passions of the jury against" Gibson.

"The decision whether to admit expert testimony ordinarily lies within the discretion of the trial court and will not be reversed unless there has been an abuse of discretion." Arcoren v. United States, 929 F.2d 1235, 1241 (8th Cir. 1990), cert. denied, 502 U.S. 913 (1991). "In the context of a conspiracy trial, district courts have particularly broad discretion in determining the nature of evidence to be admitted." United States v. Logan, 54 F.3d 452, 454 (8th Cir. 1995).

The district court has the "discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers ... in areas concerning activities which are not something with which most jurors are familiar." United States v. Cotton, 22 F.3d 182, 185 (8th Cir. 1994) (quoting United States v. Boykin, 986 F.2d 270, 275 (8th Cir.), cert. denied, 510 U.S. 888 (1993)). Bauer's testimony helped to demonstrate Gibson's role as a leader of the drug conspiracy who sold high purity heroin to lower level dealers who would then resell diluted (2% to 7% pure) heroin to users. Similarly, Bauer's testimony corroborated the testimony of Bernard Boles, who indicated that Gibson was his supplier of heroin. Based on the foregoing, the Court concludes that the district court did not abuse its discretion in allowing the testimony regarding the effects of high purity heroin.

IX.

Gibson's final argument is that the district court erred in determining that he was accountable for at least three kilograms of heroin but not more than ten kilograms of heroin, and thereby finding a base offense level of 34 under United States Sentencing Guideline Section 2D1.1. A district court's decision on the

11

amount of drugs for which a defendant can be held accountable is a finding of fact that must be accepted by a court of appeals unless it is clearly erroneous. United States v. McMurray, 34 F.3d 1405, 1415 (8th Cir. 1994), cert. denied, 115 S. Ct. 1164 (1995); United States v. Alexander, 982 F.2d 262, 267 (8th Cir. 1993), cert. denied, 114 S. Ct. 2761 (1994).

After carefully reviewing the trial record, the Court concludes that the district court did not err in determining the amount of heroin attributable to Gibson.

The decision of the district court is AFFIRMED.

A true copy.
    Attest:
    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.