**Kelvin GRIFFIN, Petitioner,**

v.

**David DORMIRE, Respondent.**

**No. 4: 95 CV 2506 DDN.**

United States District Court,
E.D. Missouri,
Eastern Division.

July 31, 1998.

Kelvin Griffin, Jefferson City, MO, pro se.

Stephen D. Hawke, Attorney General of Missouri, Assistant Attorney General, Jefferson City, MO, for Respondent.

### MEMORANDUM

NOCE, United States Magistrate Judge.

This action is before the court upon the petition of Missouri state prisoner Kelvin Griffin for a writ of habeas corpus under 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. 28 U.S.C. § 636(c).

On July 14, 1993, petitioner Griffin was convicted by a jury in the Circuit Court of the City of St. Louis of first degree assault (Count I) and of armed criminal action (Count II). On August 11, 1993, Griffin was sentenced as a prior, persistent, and Class-X offender to consecutive sentences of imprisonment of 45 years on Count I and 10 years on Count II.

Thereafter, petitioner filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15. On March 18, 1994, the circuit court sustained certain allegations in the Rule 29.15 motion to the extent that the sentence on Count I was set aside and he was resentenced to 30 years imprisonment on Count I. Resp. Exh. C at 36–37. The ten year sentence on Count II remained intact. On April 15, 1994, the trial court filed its Order and Findings denying the balance of petitioner's Rule 29.15 allegations. *Id.* at 38–43.

Petitioner appealed his convictions and sentences, and the Rule 29.15 relief that was denied him, to the Missouri Court of Appeals. In a summary opinion, the Missouri Court of Appeals affirmed the convictions, the sentences and the trial court's Rule 29.15 rulings. *See State v. Griffin,* 899 S.W.2d 150 (Mo.App.1995); Resp. Exh. G.

### *Federal Grounds for Relief.*

Petitioner now brings this federal habeas corpus action on four grounds:

(1) The trial court violated petitioner's equal protection rights by the exclusion of venireperson Weatherspoon.

(2) Petitioner's trial counsel rendered ineffective assistance of counsel by failing to make a timely *Batson* challenge to the State's peremptory strike of Ms. Weatherspoon and by failing to preserve the issue for appeal. Petitioner claims that, as a result, trial counsel became aware that he could be found ineffective and a conflict of interest arose between petitioner and his counsel, violating petitioner's Sixth Amendment right to effective assistance of counsel.

(3) The first degree assault instructions submitted to the jury denied petitioner his rights to due process and a fair trial. Petitioner alleges these instructions

(a) failed to include the definition of "serious physical injury" as set forth in pattern jury instruction MAI–CR3D 319.06 and required by MAI–CR3D 304.02, note 15;

(b) eliminated the State's burden of proving the crime involved serious physical injury, a necessary element of the charged offense; and

(c) failed to inform the jury of all the facts they would need to find before they could convict petitioner of Assault in the First Degree.

(4) By finding that petitioner was a Class X offender, the trial court denied petitioner his right to due process.

### Exhaustion of Remedies.

Each of petitioner's federal habeas grounds was raised before the Missouri Court of Appeals. Resp. Exh. E at 7–10. As set forth above, the state appellate court summarily affirmed the convictions, sentences, and denial of Rule 29.15 relief. Respondent admits that petitioner has exhausted his state court remedies for litigating his federal grounds. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6–7, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Daniels v. Jones,* 944 F.2d 429, 430 (8th Cir.1991). The Court will proceed to consider petitioner's alleged federal habeas grounds on their merits.

### Factual Background.

The trial evidence, viewed in the light most favorable to the verdicts, indicates the following: In June 1991, victim Terry Bell and Teresa Fields were living on Swan Avenue in the City of St. Louis, with their infant son, Tyrone, and Teresa' three children by petitioner. Fields and petitioner never married and their relationship ended in the early 1980's. The three children live with Ms. Fields and Terence Bell.

On June 18, 1991, at about 7:00 p.m., after sitting on his front porch, Bell walked to his front door. He knocked on it to ask Shontae, petitioner's daughter, to unlock the door. As he knocked on the door, he heard a noise behind him. He turned around and saw petitioner with a knife. Petitioner stabbed Bell in the lower chest. Bell pushed petitioner away and ran down the porch steps. Peti-

tioner grabbed Bell by his clothing and stabbed him twice in the back with the same knife.

Bell broke free, jumped a fence and ran into the backyard of a neighbor, Mark Biggs. Petitioner also jumped the fence and continued to chase Bell. When Biggs yelled, petitioner jumped back over the fence and fled the area.

Bell went into Biggs' house. An ambulance was called and Bell was taken to the hospital. Bell had sustained a puncture wound in his chest and two wounds in his back near his spinal cord.

### Ground 1.

■ In Ground 1, petitioner alleges that the trial court violated his equal protection rights by the exclusion of venireperson Jacqueline Weatherspoon, an African American woman. The record indicates that the venire panel was examined and the petit panel was selected and sworn on July 12, 1993. Resp. Exh. A at 183–84. However, on July 13, 1993, at the beginning of trial, defense counsel met with the trial judge and the prosecutor in chambers and stated:

MR. SCHUETZ: Judge, I wanted to make a Batson record. I neglected to make it yesterday and I wan to do so at this time. My notes indicate, Judge, that based on the voir dire panel information card that basically the prosecutor has struck—all on the panel of six I think he struck all black people, all six. I'd note that for the record my client is a black male. I think that this indicates that the pattern of strikes is clearly racially motivated in that my client is also a member of the black race.

THE COURT: Well, of course even under Supreme Court decisions if you were going to make one you have to make it before the jury is finally seated, and it's not timely now. I mean do you want to indicate why you didn't make it at the time?

MR. SCHUETZ: Judge, basically it was due to the lateness of the hour of the day. We were all I think trying to get the jury out and on time and everything, get them

seated because of this, as you indicated, that a lot of traffic problems and whatnot, and it was just—it was an oversight on my part.

THE COURT: ... I don't believe [your Batson challenge] is timely for that reason. I assumed that you thought he had race neutral reasons for making the strikes and that's why it wasn't made.

MR. SCHUETZ: I think those may exist, Judge, but I think it's appropriate to make a record on it nonetheless.

MR. FELLOWS: Okay, so for [post-conviction relief] purposes would it be fair to say that you felt that the prosecutor might possible have race neutral reasons but that—and so, you know, but that you want to make a record of those race neutral reasons now to preserve any kind of—

MR. SCHUETZ: Right.

MR. FELLOWS: All right. Judge, I'll go ahead and give my race neutral reasons.

Resp. Exh. A at 185–87. The prosecutor then stated his reasons for striking the black jurors. The judge found that each of the reasons given was race-neutral as follows: (1) for juror Maxine Perkins that she had an employment hardship and that she preferred not to serve, *id.* at 187; (2) for juror Tony Edwards that his demeanor appeared inappropriate and demonstrated hostility to the police over an incident involving his girl friend, *id.* at 188–89; (3) for Stephanie Somerville that she preferred not having the trial interfere with her new job and that her daughter resided in the area petitioner lived, *id.* at 190–91; (4) for juror Joseph Weber that he wore an ear ring, appeared to be disinterested in the trial procedure, and had been employed in the parking meter maintenance division, and that the prosecutor had prosecuted several women who had embezzled from the Parking Traffic Violations office of the City of St. Louis, *id.* at 191–93; and (5) for juror Darlene Daramola that her brother was convicted of illegal possession of narcotics, that her brother is approximately the same age as petitioner, *id.* at 195–96.

The prosecutor also struck juror Jacqueline Weatherspoon, stating:

MR. FELLOWS: Right, Judge. Primarily for the reason that she hadn't been employed for six years gave me reason to

suspect her as not being a good juror. She is a single parent with one child, and her general overall appearance did not even look like she was extremely interested in serving as a juror. I'm looking at she's a 30–year–old woman who appeared to be healthy enough, and I believe she was the only other person in that who stated that they were unemployed besides—besides Mr. Melton, who was struck for cause; that they were unemployed for a lengthy period of time. It would not have concerned me if she said she was unemployed for a short period of time. Many people are unemployed for short periods of time. But six years seems quite lengthy for someone who's single and has a child to support.

THE COURT: Well, it could show lack of responsibility in perhaps taking a jury case seriously, so I'll rule you did it for those reasons and not for reasons of race, and it was a legitimate hunch under *State v. Antwine.*

*Id.* at 193–94.

When the prosecution offers its reasons for strikes without being asked to do so by the trial judge, as in this case, the proffered reasons may be reviewed as if the defendant had made a prima facie case. *United States v. Brooks,* 2 F.3d 838, 840–41 (8th Cir.1993), *cert. denied,* 510 U.S. 1137, 114 S.Ct. 1117, 127 L.Ed.2d 427 (1994).

As to each of the black venire jurors struck by the state, the prosecutor offered a race-neutral reason for the strike. The state court accepted the reasons given and found that they were race-neutral. In its ruling on the petitioner's Rule 29.15 motion, the trial judge found that "[a]ll of the reasons for striking the jurors the State struck were for reasons other than race." *See* Resp. Exh. C at 31. Upon this record, the trial applied the correct standard in denying relief. *Murray v. Groose,* 106 F.3d 812, 813 (8th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 141, 139 L.Ed.2d 88 (1997).

Petitioner argues that the state's proffered reasons for the strikes were pretextual. Petitioner argues that the proffered reasons were unrelated to the case being tried, had no correlation to the ability of the juror to

serve, and were not supported by the questioning of the juror by the prosecutor. Petitioner's arguments are without merit.

Whether or not the proffered reasons were pretextual is a factual issue. *Id.* at 814–15. The basis for the trial court's ruling is supported by the record. The record of petitioner's trial shows that the prosecutor's expressed reason for striking Weatherspoon was based upon her testimony. During the voir dire examination by the prosecutor juror Weatherspoon testified that she had previously worked at the Holiday Inn, that she had not worked for about six years, and that she had one child. Resp. Exh. C at 127–28. The Eighth Circuit has ruled that unemployment is a characteristic of persons who do not have a significant stake in the community and that such is a legally sufficient, racially-neutral basis for striking a juror. *United States v. Gibson,* 105 F.3d 1229, 1232 n.2 (8th Cir.1997); *United States v. Atkins,* 25 F.3d 1401, 1406 (8th Cir.), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 322 (1994); *United States v. Ross,* 872 F.2d 249, 250 (8th Cir.1989). *See also United States v. Hunter,* 86 F.3d 679, 682–83 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 443, 136 L.Ed.2d 339 (1996); *United States v. Brown,* 34 F.3d 569, 571–72 (7th Cir.1994), *cert. denied,* 513 U.S. 1167, 115 S.Ct. 1136, 130 L.Ed.2d 1097 (1995).

Ground 1 is without merit.

### Ground 2.

In Ground 2, petitioner alleges that his counsel rendered ineffective assistance of counsel by failing to make a timely *Batson* challenge to the state's peremptory strike of juror Weatherspoon and by failing to preserve the issue for appeal. Petitioner also claims that his Sixth Amendment right to effective assistance of counsel was violated by trial counsel becoming aware that he could be found ineffective and, as a result, a conflict of interest arose between trial counsel and petitioner.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set out the standards a court must use to evaluate a claim of ineffective assistance of counsel. The Court held that to prove such a claim, the petitioner must prove that (1) petitioner's counsel's conduct was deficient, and (2) petitioner suffered actual prejudice as a result. *Id.* at 687, 104 S.Ct. 2052. The habeas petitioner must establish that counsel's deficient performance rendered the outcome of the proceeding unreliable or fundamentally unfair. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993). In addition, the prejudice must not be simply a *"possibility"* but an *"actual* and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

In the present case, the state gave race-neutral reasons for the strike of juror Weatherspoon after defense counsel raised the *Batson* issue, albeit the next day. Therefore, the record establishes that, had defense counsel made the *Batson* objection before the jury panel was sworn, the trial judge's ruling would have been the same. For this reason, the record establishes that petitioner did not suffer actual prejudice by the alleged deficiency of defense counsel.

■ Petitioner also alleges that a conflict of interest arose between himself and his counsel. He states that, because of this conflict, petitioner's Sixth Amendment right to effective assistance of counsel was violated. Petitioner bases this allegation on the theory that his counsel believed he could be found ineffective due to deficient performance with regard to the *Batson* motion.

This argument is wholly unfounded. Nowhere in the record is there evidence that petitioner's counsel had the mindset that petitioner alleges. Petitioner cannot demonstrate that he was prejudiced by defense counsel's alleged mind set and resulting actions.

For these reasons, Ground 2 is without merit.

### Ground 3.

In ground 3 petitioner claims that the first degree assault instructions submitted to the jury denied the petitioner due process and his right to a fair trial and to present a defense as guaranteed by the Constitution. More specifically, petitioner alleges that (a)

jury instruction No. 6 failed to include the definition of "serious physical injury" as set forth in the pattern jury instruction Missouri Approved Instruction (Criminal) ("MAI") 3rd 319.06 [1] and required by MAI–CR3rd 304.02, note 15; [2] (b) this failure to include the required definition reduced the State's burden of proving every fact necessary to constitute the elements of the charged offense; and (c) absent the required definition, the instruction failed to inform the jury of all the facts they would need to find before they could convict petitioner of Assault in the First Degree.

■ However, Instruction No. 9, MAI–CR 3d 306.06, submitted by the defendant, properly defined "serious physical injury" for the purposes of petitioner's assertion of self defense. Resp. Exh. B at 38. Instruction No. 13, MAI–CR 333.00, submitted by the state, defined "serious physical injury" as the term was used in the total package of the instructions ("The following terms used in these instructions are defined as follows:"). *Id.* at 44. Therefore, petitioner's argument that Instruction No. 6 lacked the requisite definition of "serious physical injury" is factually incorrect, because the correct definition was supplied by Instruction No. 13. Reading the instructions as a whole, the jury was given the criteria necessary to render a verdict on the charge of Assault First Degree. *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.") Further, a failure of the jury instructions to totally comply with state law is not a basis for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

Petitioner has failed to demonstrate that his due process rights were violated when the trial court did not include the definition of "serious physical injury" in Instruction No. 6. For these reasons, Ground 3 is without merit.

*Ground 4.*

■ In Ground 4, petitioner alleges that he was denied due process of law by the trial court's finding him to be a Class X offender.

Prior to submission to the jury, the issue of petitioner's prior offenses arose. (Resp. Exh. A at 360). The trial court found that during his testimony, Griffin admitted that he pled guilty to two prior felonies—assault and stealing from a person (*Id.* at 295–96), and was, therefore, a "prior and persistent offender within the meaning of § 558.016 R.S.Mo. and also § 557.036 . . . ." (*Id.* at 361). At that point in the trial, the prosecutor stated:

MR. FELLOWS: Your Honor, the State is filing a Substitute Information In Lieu of Indictment pleading the defendant is a Class X offender subject to eighty percent minimum term status. I need to do that before closing argument in that I'm adding the third felony conviction, that the defendant was convicted of the Unlaw Use of a Weapon in St. Louis County, that I have a certified document of that. That was done with counsel, and, Your Honor, he served more than 120 days in jail for that.

Resp. Exh. A at 362. Defense counsel objected, on the basis of prosecutorial vindictiveness, to the state's action in amending the charges to increase petitioner's criminal status to Class X offender. *Id.* at 364. After reviewing the factual bases for the allegations of prior convictions, *id.* at 364–372, the trial judge made the finding that petitioner was a Class X offender. *Id.* at 372.

Petitioner invokes Rev. Stat. Mo. § 1.160 (1986) and argues that, under the 1994 amendment of Mo.Rev.Stat. § 558.019, which changed the statutory scheme for determining recidivist status from prior convictions to prior remands to the Department of Corrections, he should not have been subjected to the minimum term limits required by the Class X status, because he had been previously incarcerated only one time.[3] However,

---

**1.** MAI–CR3rd 319.02 defines "serious physical injury" as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body."

**2.** Note 15 of MAI–CR3rd 304.02 states: "MAI–CR3rd 319.02 requires that a definition of 'seri-

ous physical injury' be given each time that instruction is used."

**3.** Rev. Stat. Mo. § 1.160 (1986), in effect in 1991, when petitioner's crimes occurred and in 1993, when he was originally sentenced, provided as follows:

the 1994 amendment of § 558.019 was made applicable "only to offenses occurring on or after August 28, 1994." *See* Rev. Stat. Mo. § 558.019.7 (1994). Because petitioner was convicted of offenses that occurred on June 18, 1991, the 1994 amendment to § 558.019 was not applicable to petitioner's case.

Therefore, the state law underpinning of ground 4 is not as petitioner argues. Petitioner is not entitled to any relief on ground 4 of this habeas corpus petition.

The petition of Kelvin Griffin for a writ of habeas corpus is dismissed with prejudice and without further judicial proceedings. Any pending motions are denied as moot.

*Effect of repeal of penal statute.*—No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except (1) that all such proceedings shall be conducted according to existing laws; and (2) that if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense, the penalty or punishment shall be assessed according to the amendatory law.