# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3561

_____

United States of America,          *
            *
        Plaintiff-Appellee,     *
            *   Appeal from the United States
    v.               *   District Court for the
            *   Southern District of Iowa.
Edward Booker,          *
            *
        Defendant-Appellant.   *

_____

Submitted: June 12, 2009
Filed: August 5, 2009

_____

Before MURPHY, SMITH, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Edward Booker was convicted by a jury of possession with intent to distribute at least five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The district court sentenced him to 380 months. Booker appeals, arguing that the district court erred by allowing a juror to reference extrinsic evidence during deliberations and by denying his <u>Batson</u> challenge. He also contends that there was insufficient evidence to support the jury's drug quantity determination which impacted his sentence. We affirm.

## I.

Two Davenport police officers were dispatched at 1:00 am on July 3, 2007 to investigate a disturbance at an apartment complex in a neighborhood frequented by drug dealers. Upon arrival the officers observed Booker and Alicia Joiner seated on the back porch of an apartment unit. When Booker noticed one of the officers, he pulled a plastic bag from his waist band, dropped it on the ground, and whispered something to Joiner. She then picked up the bag and attempted to conceal it behind his back. An officer retrieved the bag from Joiner, inspected it, and determined that it appeared to contain crack cocaine. Booker and Joiner were then arrested and searched incident to arrest. A cell phone, Illinois identification card, and $266 in small denominations were recovered from Booker. Booker was later indicted for possession with intent to distribute at least five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

A jury trial commenced on June 3, 2008. During voir dire two prospective jurors – the only African Americans in the venire – responded affirmatively when the prosecutor asked whether "anybody here [has] had a bad interaction with a police officer, either during a speeding ticket or something else . . . ?" One of the two was Carmelita Powell. She stated, "[w]ell, I had two of them." She recounted an incident in which she had attempted to convey witness information to a Davenport police officer investigating a murder but was rebuffed by the officer who told her, "just get away from me, I don't have time for this." The other incident involved a police officer who "scream[ed]" at her while investigating an automobile accident. Lillian Carpenter-Bassett, the other African American in the venire, responded that she had once been locked in the back of a squad car during the investigation of a routine traffic accident and treated by Davenport police officers in a "very rude" manner.

After the prosecutor exercised peremptory challenges to strike both of the prospective jurors, Booker raised a Batson challenge. The district court assumed

-2-

without deciding that Booker had made a prima facie showing of purposeful discrimination. In response the prosecutor explained that both women had been removed because they "were the only two jurors that responded having a negative run-in with the police" and were thus potentially biased against the prosecution. The district court found that the prosecutor had articulated a "legitimate" race neutral reason for exercising the peremptory challenges and noted that the threat of bias was heightened because both the arresting officers and the officers with whom the potential jurors had expressed dissatisfaction were members of the Davenport Police Department. The district court denied the <u>Batson</u> challenge.

In addition to the arresting officers, prosecution witnesses included Terry Rowe, a criminalist from the Iowa Division of Criminal Investigation, and Sergeant Kevin Smull, a narcotics investigator with the Davenport Police Department. Rowe provided testimony regarding the composition and weight of the crack cocaine recovered by the officers. The plastic bag dropped by Booker contained forty three individually wrapped rocks, and Rowe performed a visual examination of each and determined that they were "homogeneous" (i.e., virtually identical). Rowe then randomly selected twenty nine rocks for chemical analysis. Each of the twenty nine rocks tested positive for cocaine base. Rowe testified that the sample size – twenty nine of forty three – was dictated by statistical methods accepted by the Drug Enforcement Administration and allowed him to determine to a 95% scientific certainty that the untested rocks were crack cocaine. The cumulative weight of the tested and untested rocks was determined by Rowe to be 7.99 grams. Smull testified that the recovery of forty three individually wrapped rocks of cocaine, $266 in small denominations consistent with street level dealing, and a cell phone indicated that Booker possessed the crack cocaine with intent to distribute rather than with intent to use. His opinion was bolstered by the absence at the scene of arrest of any paraphernalia required to smoke crack cocaine.

The defense put on two witnesses. Juanita Drones, who had four children with Booker, testified that she had wired $200 to Booker on July 2, 2007. A Western Union receipt was entered into evidence, indicating that Booker had received the funds from this transaction at 5:30 pm on July 2. Drones also testified that Booker received social security income. Julie Olson, the terminal manager at the Burlington Trailways and Greyhound bus station, testified that the company passenger list indicated that Booker had purchased tickets to travel between Milwaukee, Wisconsin and Davenport on June 19 and June 27, 2007.

Prior to closing arguments, juror John Wagner sent the following note to the district court:

> I used to run a substance abuse agency. Can I bring the knowledge of the usage habits of crack cocaine users into the jury deliberations, specifically that a user in my experience would probably never be in possession of 43 units of crack cocaine?

At Booker's personal request, the district court met with the juror in the presence of counsel to determine whether the juror would be able "to consider the evidence . . . [and] to change his opinion [] during deliberations." When asked by the district court whether he remained "open mind[ed]" and willing to "consider the comments of [] fellow jurors in deliberations" the witness responded, "[y]es, I can." This response left the district court "very satisfied that he is still that good juror that we are looking for." The district court concluded that it need not prohibit the juror from bringing his experiences into deliberations if "a very strong jury instruction" were issued explaining that while jurors "may consider th[e] evidence in light of their common sense and experience" they can "only [] consider the evidence admitted in the case." Booker's attorney did not object "to th[e] juror himself" or to the "proposed solution to th[e] matter."

The modified final jury instruction number one read, in relevant part:

> The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you. Your decision about the facts of this case must be based solely on the evidence admitted here in court during the trial. You may, however, consider that evidence in the light of your common sense and your experiences.

This agreed on instruction contained minor modifications from the original proposal.[1]

At the conclusion of deliberations, the jury found Booker guilty of possession with intent to distribute at least five grams of cocaine base, and he was sentenced to 380 months based on his career offender status (total offense level 37 and criminal history category VI). Booker now appeals, arguing that the district court erred in permitting a juror with expertise in substance abuse to disclose to the jury his opinion on the issue of intent to distribute, that he was denied his right to equal protection by the prosecution's striking the only African American members of the jury pool, and that insufficient evidence supported the jury's drug quantity determination.

## II.

Booker claims that his constitutional rights to be tried by an impartial jury, to confront and cross examine witnesses, and to have the verdict based on evidence adduced at trial were violated when the district court "allow[ed] Juror Wagner to tell the jury of his claimed expertise and opinions concerning whether [he] intended to

---

[1]Prior to modification the preliminary jury instruction read in relevant part:

> From the evidence, you will decide what the facts are. You are entitled to consider that evidence in the light of your own observations and experiences. You may use reason and common sense to draw deductions or conclusions from facts which have been established by the evidence.

distribute crack cocaine." The agreement permitted juror Wagner to use his experience in running a substance abuse agency to inform other jurors that a drug user would normally never have as much crack as he was accused of possessing.

Federal Rule of Criminal Procedure 24 authorizes the court and the parties to examine prospective jurors during voir dire, and the parties may choose to utilize peremptory challenges to excuse any jurors considered unsatisfactory or may request the court to examine a juror for perceived bias. During voir dire several questions were posed that might have prompted juror Wagner to disclose his prior experience with drug abusers. For example, the members of the venire were asked whether they "kn[e]w anything about this case other than what [they] have heard in the courtroom here today" and whether they might be predisposed to partiality because the case involved drugs. Juror Wagner did not respond to either question. The district court thus faced a situation in which it was not informed until the parties had rested that a juror had experience relevant to a critical issue. In the absence of any post trial request under Federal Rule of Evidence 606(b), which permits inquiry into whether any extraneous prejudicial information was improperly brought to a jury's attention, the record is silent about what information juror Wagner may have disclosed to the other jurors based on his own experience, including about "usage habits" of crack users and the significance of possessing 43 units of crack. Nor was there any exploration into the nature and extent of Wagner's experience and knowledge. Cf. Fed. R. Evid. 702.

We generally subject claims of constitutional error to de novo review, United States v. Washington, 318 F.3d 845, 854 (8th Cir. 2003), but both the United States and Booker suggest that our review must be for plain error because defense counsel failed to object to the challenged procedure at trial. See, e.g., United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). Not only did defense counsel fail to object, but counsel affirmed that the defense had no objection to juror Wagner when it was clear from the context that Wagner was being granted permission to talk to the

other members of the jury about his experience with drug users and his opinion about user amounts of crack. After the district court brought juror Wagner's note to the attention of counsel, it revised the jury instructions in an attempt to address any concerns prompted by the request.[2] Defense counsel reviewed the revised instructions and then stated, "[y]our honor, we have no objections to your proposed solution to that matter and I note that you have included language in Instruction No. 1 that addresses that . . . . And I don't have any objections to that juror himself."

Since the defense approved the procedure which appellant now attacks, we must consider whether the issue was forfeited or waived in the district court. In United States v. Olano, 507 U.S. 725, 733 (1993), the Supreme Court distinguished forfeiture, "the failure to make the timely assertion of a right" from waiver, the "intentional relinquishment or abandonment of a known right." While forfeited claims are subject to appellate review under the plain error standard, waived claims are unreviewable on appeal. United States v. Gutierrez, 130 F.3d 330, 332 (8th Cir. 1997). Here, the record makes it clear that we are confronted with a clear case of waiver, thus "our plain error analysis [must come] to a grinding halt." Id. (quoting United States v. Yu-Leung, 51 F.3d 1116, 1122 (2d Cir. 1995)). Booker's right to challenge the district court's resolution of this issue has therefore been waived.[3]

Booker also claims that the district court erred in denying his Batson challenges. The prosecution violates the equal protection clause when it exercises peremptory challenges to strike potential jurors "solely on account of their race." Batson v. Kentucky, 476 U.S. 79, 89 (1986). To prevail on a Batson challenge, the defendant must make "a prima facie showing of racial discrimination." United States

---

[2]Although the district court might well have issued a more specific limiting instruction, its approach satisfied the parties.

[3]Booker of course retains the right to raise a challenge to his conviction under 28 U.S.C. § 2255. See Massaro v. United States, 538 U.S. 500, 509 (2003).

v. Campbell, 270 F.3d 702, 705 (8th Cir. 2001). Once a defendant makes such a showing the burden shifts to the prosecution to offer a race neutral explanation for the peremptory challenges. Id. If a race neutral explanation is offered the district court must determine whether the explanation is legitimate or is instead "mere pretext" for purposeful discrimination. Id. at 706. Since a trial court's resolution of a Batson challenge is a finding of fact as to whether the government's proffered reason for using a peremptory challenge is credible, we review a district court's Batson ruling for clear error. See Campbell, 270 F.3d at 706.

Booker argues that the district court clearly erred in finding that the prosecutor's explanation for the peremptory strikes was not pretext for purposeful discrimination. We do not agree. During the jury selection process only two prospective jurors responded affirmatively when asked whether they had "had a bad interaction with a police officer." Although they happened to be the only African Americans in the venire, the prosecutor articulated a race neutral reason for exercising the peremptory challenges, referencing each "response to the question as to any run-ins with the police . . . ." A juror's expression of past dissatisfaction with law enforcement officers, which could indicate potential bias against the prosecution, is a legitimate race neutral reason for striking prospective jurors. United States v. Crawford, 413 F.3d 873, 875 (8th Cir. 2005) (per curiam). Once the prosecution satisfied its burden of articulating a race neutral reason for exercising peremptory challenges, it fell to Booker to overcome the presumption of legitimacy. United States v. Gibson, 105 F.3d 1229, 1232 (8th Cir. 1997).

Booker's trial counsel responded only that he did not think the challenged jurors had "indicated that they would be biased" and that their elimination raised "serious question[s] in my mind as to whether or not we are intentionally excluding blacks from sitting on this jury." The district court found, however, that "the race neutral reasons for the exercise of these peremptory challenges was the true reason for them," and we see no clear error in its determination. Booker belatedly asserts on

appeal that two different jurors,[4] neither African American, had also indicated potential bias against law enforcement. Neither responded affirmatively when asked whether they had "had a bad interaction with a police officer," however, in contrast to the challenged jurors. They were thus not similarly situated. Moreover, the argument is untimely. See Gibson, 105 F.3d at 1232 ("similarly situated" Batson argument cannot be raised for the first time on appeal).

Finally, Booker challenges the sufficiency of the evidence, arguing that the government failed to prove beyond a reasonable doubt that all of the substance seized was crack and that he possessed more than five grams in the aggregate. We review the sufficiency of the evidence in the light most favorable to the verdict and overturn it only if no reasonable jury could find that the elements of the offense have been proven beyond a reasonable doubt. United States v. McKay, 431 F.3d 1085, 1094 (8th Cir. 2005).

Criminalist Rowe testified that the substance seized was crack cocaine and that it weighed 7.99 grams in the aggregate. Although Rowe performed chemical analysis on only twenty nine of forty three rocks seized, he testified that the untested rocks were virtually identical in appearance to the tested rocks and stated to a 95% scientific certainty that the remaining rocks were also crack cocaine. Moreover, one of the arresting officers, who had experience in narcotics investigations, confirmed at trial that he "field tested" the seized substance and determined that it was comprised of forty three rocks of crack cocaine. Since "[i]t is well established that the identity of a controlled substance can . . . be proved by circumstantial evidence and opinion testimony," United States v. Whitehead, 487 F.3d 1068, 1072 (8th Cir.), cert. denied, 128 S. Ct. 693 (2007) (alterations in the original) (quotation omitted), the jury's drug quantity determination was supported by sufficient evidence which renders Booker's

---

[4] Janis Jackson, whose son in law was a public defender, and Paul Stephenson, who suggested that "the government would be throwing people in jail left and right" without the reasonable doubt standard.

evidentiary challenge meritless.  See also Gibson v. Bowersox, 78 F.3d 372, 374 (8th Cir. 1996) (holding that random testing of pieces of similar texture and color is sufficient to prove drug quantity element of an offense); United States v. Tran, 519 F.3d 98, 106 (2d Cir.), cert. denied, 129 S. Ct. 142 (2008) (evidence of chemist's random testing of twenty nine pills from each of three bags containing thousands of pills of similar appearance sufficient to prove drug quantity).

III.

For the foregoing reasons the judgment of the district court is affirmed.

_____